JOSIAH ARNOLD *et al. versus* NELSON. STEVENS.

In the case of a grant by deed of the right to dig ore in the land of another, the mere neglect of the grantee, for forty years, to exercise the right, without any act of adverse enjoyment on the part of the owner of the land, will not extinguish such right ; and the occupation and cultivation of the land by the land owner during such period, are not evidence of adverse enjoyment of the right to dig the ore

THIS was trespass for breaking and entering the plaintiffs' close, and digging and carrying away iron ore, &c. between the 8th of May, 1837, and the 1st of June, 1838. The trial was before *Putnam*, J.

The plaintiff deduced his title as follows : On the 23d of December, 1766, Micah Mudge conveyed the *locus in quo* to Alexander Gaston senior, by a deed containing the following clause : " excepting the whole privilege of building a corn mill or mills on the stream said land contains, and all the iron ore therein contained, together with the privilege of digging and carrying off in some convenient place." A. Gaston senior devised the *locus* to his son, Alexander Gaston junior, " reserving, only, all the iron ore on said bequeathed land, with the privilege of digging and carrying off in some convenient place." A. Gaston junior, upon the death of his father, entered into possession of the *locus ;* and after his death his title thereto vested in Heman Gaston, one of his heirs, who conveyed the *locus* to the plaintiffs, without making any exception or reservation.

The defendant proved, that on the 7th of June, 1763, Mudge, by deed, conveyed to Samuel Brown, among other things, a certain part of " the mines, minerals, or precious stones," " found or hereafter to be found " on the land, " with the liberties to cut wood, raise stone, dig, search and improve to the best advantage, and export at convenient ways and passages anywise across the said land ; also to build iron works, forge or furnace, on any of the streams in said land, and passing and repassing from said iron works or furnace when built, with any carriage or carriages, all his part of said ores, or the produce of the same, or of any thing necessary to manufacturing said ore, without let or molestation of or from said

Micah Mudge, his heirs or assigns." Upon the death of Samuel Brown, his title under such deed vested, by force of a residuary clause in his will, in his son, Elisha Brown, who in 1836, leased to the defendant a right to enter upon the premises, and dig and remove ore.

It appeared, that after the entry of A. Gaston junior upon the premises, which took place in 1783, he and his heirs continued in the open, exclusive and uninterrupted possession thereof until after the execution of the lease from E. Brown to the defendant; that the premises were cultivated and in meadow; and that more than forty years previous to the execution of such lease, a pit was made on the premises and some ore dug ; but that the pit was afterwards filled up

There was no evidence, that any claim was made to the ore or to any other rights conveyed to Samuel Brown by Mudge or excepted in the deed from Mudge to A. Gaston senior, either by Mudge, or any one, claiming under him, for a period of more than forty years, nor that A. Gaston senior, or his son, claimed such ore, unless the facts before stated constituted such claim ; nor was there any evidence, that E. Brown, for a period of forty years after the will of S. Brown was proved, made any claim to the ore, he being, for a considerable part of that time, insolvent.

The jury returned a verdict for the plaintiffs.

If the Court should be of opinion, that the jury were authorized by law to find such a verdict, it was to stand ; otherwise, it was to be set aside, and a new trial granted.

*Bishop* and *Briggs*, for the defendant, cited *Goodtitle* v. *Chandos*, 2 Burr. 1065 ; *Eldridge* v. *Knott*, 1 Cowp. 214 ; *Jackson* v. *Welden*, 3 Johns. R. 283 ; *Keene* v. *Dearborn*, 8 East, 263 ; *Doe* v. *Butler*, 3 Wendell, 149 ; *Daniel* v. *North*, 11 East, 372 ; *Brandt* v. *Ogden*, 1 Johns. R. 156 ; *Jackson* v. *Schoonmaker*, 2 Johns. R. 230 ; *Schauber* v. *Jackson*, 2 Wendell, 13.

*Byington* and *Tucker*, for the plaintiffs, cited *Hoffman* v. *Savage*, 15 Mass. R. 130 ; *Jackson* v. *Joy*, 9 Johns. R. 102 ; *Doe* v. *Prosser*, Cowp. 217 ; *Jackson* v. *M'Call*, 10 Johns. R. 377 ; *Hepburn* v. *Auld*, 5 Cranch, 262 ; *Jenkins* v. *Hopkins*, 9 Pick. 543 ; 2 Saund. 175, note ; 3 Kent's Comm.

*Arnold
v.
Stevens*

*Sept. 20th,
1839.*

Arnold
v.
Stevens.

Sept. 21st,
1839.

355 ; *Bealey* v. *Shaw*, 6 East, 214 ; *Ingraham* v. *Hutchinson*, 2 Connect. R. 584 ; *Atkins* v. *Bordman*, 20 Pick. 302.

MORTON J. delivered the opinion of the Court. The defendant admits the acts complained of as a trespass, but justifies them under a claim of right. He alleges that those under whom he acted were the rightful owners of iron ore on the *locus in quo*, with the privilege of digging and removing the same.

The plaintiffs' title to the fee of the land is undisputed. The burden, therefore, to show that the estate is subject to a servitude, and that he is entitled to the special interest in it which he claims, rests upon the defendant. Formerly the whole estate was in Micah Mudge. From him the plaintiffs regularly derive their title to the fee ; and under him the defendant claims the right upon which he rests his defence.

In 1763, Mudge conveyed to Samuel Brown, among other things, a certain part of "the mines, minerals or precious stones" "found or hereafter to be found" on the land, with liberty "to dig, search and improve to the best advantage," to build iron works on any of the streams on the land, and to export with "carriages all his part of said ores or the produce of the same." This grant undoubtedly vested in Brown a particular estate or easement. That such a right, interest or privilege in real estate may be conveyed by deed, without conveying the estate itself, is unquestionable. Co. Lit. 4 b ; *Rehoboth* v. *Hunt*, 1 Pick. 224. Whatever estate vested in S. Brown, passed by his will to E. Brown, whose lessee the defendant is. The title thus traced extends to a portion only of the easement. But it is immaterial to the present action, whether the defendant can show a title to the other portions or not, for if he is a tenant in common with the plaintiffs or any other persons, he is not liable to this action.

In recurring to the plaintiffs' title there will be found to be a perfect coincidence between the titles of the two parties. All the deeds under which the plaintiffs claim, carefully exclude them from all right to the ore, &c. Mudge, in his conveyance of the *locus in quo* to A. Gaston, in 1766, expressly excepts from his grant, among other things, "*all the iron ore therein contained, together with the privilege of digging and carrying*

*off in some convenient place."* And A. Gaston, in his devise to
his son A. Gaston junior, has the following words : " *reserving,
only, all the iron ore on said bequeathed land, with the privi-
lege of digging and carrying off in some convenient place."*
Although this was a reservation, instead of an exception, the
meaning of the testator cannot be mistaken. It is true, that
H. Gaston conveyed to the plaintiffs the whole estate without
any exception or reservation ; but this conveyance was so
recent, that it can have no bearing upon the question of title.

From this review of the muniments of title on both sides, it
is perfectly clear, that so far as the documentary evidence
goes, the defendant's lessor is the owner of the particular estate
or easement, and that the plaintiffs hold the general estate in
fee, subject to this servitude. And their only ground of claim
is, that the easement has been extinguished or transferred by
some neglect or omission on the part of the legal owners.
Subsequently to the grant of the ore &c. by Mudge, a pit was
opened and ore dug and removed from it ; but the pit has been
closed and no act done in assertion of the grantee's right, for
more than forty years. During all this time, the plaintiffs and
their predecessors have enjoyed the entire use and occupation
of the land. And the question now is, whether, from the acts
of the one party and the neglects and omissions of the other,
the extinguishment or transfer of this servitude is to be in-
ferred.

The right to enter, dig and remove ore &c. granted to
Brown, was an incorporeal hereditament, which could only be
transferred by deed with all the formalities required by law for
the conveyance of real property. *Thompson* v. *Gregory,* 4
Johns. R. 81. Do the facts disclosed in this case, furnish a
sufficient foundation for the presumption of a legal conveyance
of this easement from its owners to the owners of the land ?
The doctrine of the presumption of grants, though of modern
origin, is well established and well understood. It rests upon
the same principles and is governed by the same rules as other
circumstantial evidence. The existence of one thing is in-
ferred from the existence of other things which could not well
exist without it. These presumptions are usually founded on
adverse enjoyment for a length of time. The period gen-

erally fixed upon for this purpose, is twenty years. They are sometimes strengthened and sometimes weakened by other circumstances. 3 Stark. Evid. 1215, and cases cited ; *Hill* v. *Crosby*, 2 Pick. (2d ed.) 466, note ; *Jackson* v. *M'Call*, 10 Johns. R. 371.

This doctrine of presumption is usually applied to incorporeal hereditaments, as rights of way, of common, of fishery, of turbary, of lights, of water, of a market, and the like. See the last citations. But the principle extends to corporeal as well as incorporeal hereditaments. A right to a pew may be presumed from uninterrupted enjoyment. *Darwin* v. *Upton*, 2 Saund. 175, note. So a grant of land may be presumed, as well as a grant of an easement. *Ricard* v. *Williams*, 7 Wheat. 107.

But in all cases the possession, to raise any, even the slightest, presumption, must be *adverse*. It must be under a claim of right, and contrary to the interests of the owner. An enjoyment with the consent, or consistently with the rights of the true owner, has no tendency to prove a conveyance from him. *Bealey* v. *Shaw*, 6 East, 214 ; *Keene* v. *Deardon*, 8 East, 263. The very ground of the presumption is the difficulty or impossibility of accounting for the possession or enjoyment without the existence of a grant, or some other lawful conveyance. *Devereux* v. *Duke of Norfolk*, 1 Price, 247. But, if the possession can be accounted for consistently with the title, no presumption arises. 2 Saund. 175, note ; *Daniel* v. *North*, 11 East, 372 ; *Wood* v. *Veal*, 5 Barn. & Ald. 454. " The presumption of a deed from long usage, is for the furtherance of justice and for the sake of peace, when there has been a long exercise of an *adverse right*." " For instance it cannot be supposed that any man would suffer his neighbour to use a way with carts and carriages over his meadow, for twenty years successively, unless some agreement had been made between the parties to that effect." *Crimes* v. *Smith*, 12 Coke, 4 ; *Bedle* v. *Beard*, 12 Coke, 5 ; *Mayor of Kingston* v. *Horner*, Cowp. 102 ; *Parker* v. *Baldwin*, 11 East, 488. But, says a learned judge of the Supreme Court of the United States, " presumptions of this nature " " are founded upon the consideration, that the facts are

such as could not, according to the ordinary course of human affairs occur, unless there was a transmutation of title to, or an admission of an existing adverse title in the party in possession. They can, therefore, never arise where all the circumstances are perfectly consistent with the non-existence of a grant. *Ricard* v. *Williams,* 7 Wheat. 109.

In the case at bar there was no *adverse* possession. The occupation of the owners in fee was consistent with the rights of the owners of the easement. In *Brandt* v. *Ogden,* 1 Johns. R. 156, *Spencer* J. says, " in order to bar the recovery of a plaintiff who has title, by a possession in a defendant, strict proof has always been required, not only that the possession was first taken under a claim *hostile* to the real owner, but that such *hostility* has existed on the part of the succeeding tenants." Here, although the occupation of the predecessors of the plaintiffs was not consistent with the *exercise* of the right claimed by the defendant, yet it was no infringement of that right. They did not dig any ore, they did not preclude any other persons from digging, nor exclude them from the land. Until the owners of the easement chose to exercise the right granted to them it was inoperative, and left the owners of the soil free to make such use of it as their interest might require. *Thompson* v. *Gregory,* 4 Johns. R. 81. By the principles of law governing easements of this kind, the owners of the soil had a perfect right to make every use of it which could be done without infringing the servitude. And as long as this remained unused they were entitled to the whole benefit of the land as much as if it did not exist. And in *Ricard* v. *Williams, Story* J. says, " it must appear that the party found in possession, entered without right and was in fact a disseiser ; for, if his entry were congeable, or his possession lawful, his entry and possession would be considered as limited to his right. For the law will never construe a possession tortious, unless from necessity. On the other hand, it will consider any possession lawful the commencement and continuance of which is not proved to be wrongful ; upon this plain principle, that every man shall be presumed to act in obedience to his duty, until the contrary appears." The exceptions contained in the several instruments, by which the title to this land was

conveyed, apprized the owners of the extent of their rights, and their possession must be presumed to be under and according to their title. They did no act inconsistent with the easement claimed by the other party, or which indicated any claim on their part to the ore on the land. Their estate was subject to this servitude. They made no attempt to throw it off. They did nothing adverse to the rights of the owners of the easement, nothing to which they could object, or which would apprize them of the existence of any hostile claim. No acquiescence, therefore, existed from which a conveyance could be presumed.

If the lessors of the defendant have lost their right, it is merely on the ground of *nonuser*. They have produced good documentary evidence of ownership. No one else has shown any title; and there is no adverse possession. Will a mere omission to work the mine extinguish or transfer the right?

In *Doe v. Butler*, 3 Wendell, 149, the court, by *Sutherland* J., say, "the presumption of a grant against written evidence of title can never arise from the mere neglect of the owner to assert his right." The evidence of title to incorporeal hereditaments and of the transfers of it, is governed by most of the same principles which apply to other real estate. If the title to land depended on the same ground, there could be no question. The omission to occupy a house or a farm for any length of time, there being no adverse possession of it, would raise no presumption against the title of the owner. The legal possession will be in the owner; for the seisin follows the title. The same presumption applies to the case at bar, and the legal seisin of this incorporeal hereditament is in him who has the title, until it be shown that he has been ousted. If the omission to occupy raises a presumption against the one party, so it does against the other; for there was no actual occupation, and the legal possession is always presumed to be in the true owner.

If the owner of an estate suffer another person to enjoy it and exclude him from it for a great length of time, the presumption is strong, that the one has sold and the other has bought it. But if neither has possession, the law raises no presumption about it, but leaves it to rest upon the legal title

If the omission to dig the ore by those who had the title to it, raises a presumption that they have parted with it, so the omission by the other party to take possession of the mine raises an equally strong presumption that they have not acquired it. And in the absence or balance of evidence, the legal presumption must prevail, that the possession of both was according to their respective titles.

Chancellor *Kent*, in 3 Kent's Comm. 359, says, that "a right acquired by use may however be lost by nonuser." *Bracton* also, *lib.* 4, *c.* 38, § 3, lays down the same rule, that incorporeal rights acquired by use may be lost by disuse. And the civil law contains a similar principle. And these are the authorities relied upon by the plaintiffs' counsel. But we think the general propositions laid down, were accompanied by important limitations or qualifications. *Kent* adds, in the same sentence, that "an absolute discontinuance of the use for twenty years affords a presumption of the extinguishment of the right in favor of some other *adverse* right." But we do not think that the mere nonuser of an easement, even for twenty years, will necessarily raise a presumption of its extinguishment; unless there has been during the time some acts done by the owner of the land inconsistent with, or adverse to the existence of the right. In *White* v. *Crawford*, 10 Mass. R. 183, it was directly decided, that an express grant or reservation of a right of way was not lost by a nonuser of twenty years. And it is not easy to discover any legal difference between the effect of a deed proved by the writing itself, and one proved by circumstantial evidence. The same principle or qualification of the general proposition seems to prevail in the civil law. A servitude was presumed to be extinguished when the owner of the estate to which it was due, suffered the owner of the estate charged with it to erect such works on his estate as necessarily and entirely hindered the exercise of the right, and operated to annihilate it. Voet. Com. ad Pand. *lib.* 8, *tit.* 6, § 5, 6, 7 ; 3 Toullier's Droit Civil Français, 506 ; Civil Law of Louisiana, *art.* 815, 816.

We do not doubt the soundness of the general principle, nor its government of the cases properly coming within it. But

Arnold
*v.*
Stevens.

we doubt its application to servitudes created by deeds.   The rule is, that rights acquired by *use* may be lost by *disuse.* The exclusive enjoyment of certain portions of the common elements of nature, as light, air, and water, which seem to be incapable of ownership or of conveyance, are the proper subjects of this rule.   And to nothing does it more properly apply than to the right to the use of water for mill purposes.   Water privileges are often acquired entirely by priority of occupancy, and, therefore, the continuance of the right should depend on the continuance of the occupancy.

But in the case at bar, as the right was neither acquired nor evidenced by use, so we think it cannot be lost by disuse. And as there was no *adverse* enjoyment to raise the presumption of a conveyance or release of it, the right of those holding the written title remains unimpaired.

*New trial granted*