## THE AMERICAN BRASS COMPANY *vs.* FREDERICO SERRA.

First Judicial District, Hartford, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and BANKS, Js.

In determining the character and extent of an easement created by deed, the ordinary import of the language used will be accepted as indicative of the intention of the parties unless there is something in the situation of the property or the surrounding circumstances which calls for a different interpretation.

If the grant is in general terms, it will ordinarily be construed as creating a general right of way capable of use for all reasonable purposes.

Where an owner divides a tract of land and, in conveying one portion of it, creates in favor of the grantee a right of way over the other portion by a deed which is recorded, subsequent pur-

chasers of such other portion, and their successors in title, are charged with constructive notice of the existence of the easement.

If the location of a right of way is not fixed in the deed which creates it, it may be established by the practical use which the grantee makes of it, when that use accords with the reasonable convenience of both parties and is acquiesced in by grantor.

Mere nonuser cannot of itself result in the extinguishment of an easement; to have that effect, it must be accompanied by circumstances indicating an abandonment or a release by prescription.

The owner of an easement may abandon it by acts coupled with an intent to abandon; but it must clearly appear that the acts relied on were done voluntarily by the owner or by his express authority, that he had the power to bind the estate by his grant or release, and that his acts were of so decisive and conclusive a character as to prove the requisite intention.

To establish the loss of an easement by prescription, it must be shown that the owner of the servient tract, by adverse use of a notorious, exclusive and hostile character, obstructed and excluded the owner of the dominant tract under such circumstances as to form the basis for an inference that the owner of the dominant tract intended to release or abandon the easement to the owner of the servient tract.

The accrual of a right of action or other legal redress is the starting point of a title by prescription.

The owners of a servient tract have the legal right to exercise all the privileges and benefits of ownership which are consistent with the existence of the easement.

In 1864, M conveyed to a predecessor in title of the plaintiff a portion of a tract of land upon which was located wood suitable for use as fuel in a manufacturing plant, and in 1868, while still the owner of the balance of the tract, he deeded to the same grantee "the right of a passway" across it for the purpose of more conveniently carrying the wood to the highway. In 1877, M's administrator conveyed the balance of the tract to a predecessor in title of the defendant. In 1888 and 1889, the owner of the plaintiff's tract cut down the wood thereon and moved it across the passway, but at no time since has the passway been used for that or any other purpose; nor would any occasion arise for using the passway until the wood had attained by natural growth a suitable size for fuel, which can occur only once in every thirty or thirty-five years. At the request of K, who owned the defendant's tract from 1898 to 1907, the plaintiff contributed to the expense of erecting a barbed-wire fence along the entire boundary between the two tracts. In the present action to restrain interference with the passway, the defendant claimed

American Brass Co. *v.* Serra.

that the plaintiff had lost title thereto by abandonment or by prescription. *Held:*

1. That the subordinate facts, including the consent of the owners of the plaintiff's tract to the erection and maintenance of so slight and impermanent a structure as the wire fence, offered no basis for a conclusion that they intended at any time to abandon the easement.

2. That the acts of the owners of the defendant's tract, even assuming that the wire fence had been constructed and maintained by them without the consent of the adjoining owner, were such as were within their legal rights in the use of their land for pasturage purposes, were consistent with the existence of the easement, and, therefore, were not hostile and adverse and created no rights by prescription.

Argued January 8th—decided February 23d, 1926.

ACTION for an injunction restraining the defendant from interfering with the plaintiff's right of way, and for damages, brought to the Superior Court in Litchfield County and tried to the court, *Simpson, J.;* judgment for the plaintiff, and appeal by the defendant. *No error.*

The facts found appear sufficiently in the opinion.

*Frederic W. Dauch,* for the appellant (defendant).

*Walter E. Monagan* and *Walter F. Torrance,* for the appellee (plaintiff).

CURTIS, J. The facts found disclose that Levi D. Markham owned in 1864 a large tract of woodland in Plymouth, which included the two adjoining tracts now owned by the plaintiff and the defendant, respectively. In 1864, he conveyed to a predecessor in title of the plaintiff one of the adjoining tracts and retained the other. In 1868, while still owning the balance of his original tract, he conveyed by warranty deed to his grantee in the deed of 1864, to wit, to the Holmes, Booth and Haydens Company, "the right of a passway" across the balance of the original tract.

This deed expressed the purpose of "the right of a passway" as follows: "for the purpose of getting wood from the lot I sold to the company . . . and for all other purposes connected with said lot as the case may require." Both these warranty deeds were duly recorded in Plymouth. The deed of the way is to be construed by its terms, and the situation of the property, and the surrounding circumstances, with a view to ascertain the intention of the parties. The ordinary import of the language will be given to it, in the absence of anything in the situation or surrounding circumstances to indicate a contrary intent. *Sweeney* v. *Landers, Frary & Clark,* 80 Conn. 575, 578, 69 Atl. 566; *Peck* v. *Mackowsky,* 85 Conn. 190, 193, 82 Atl. 199.

The language of the deed indicates a grant of a right of way in general terms. "A grant [of a way] in general terms will ordinarily be construed as creating a general right of way capable of use for all reasonable purposes." 2 Tiffany on Real Property (2d Ed.) § 367, p. 1332.

The surrounding facts disclose that the grantee of the way was the owner of a tract of woodland suitable only for growing wood in natural course and likely to be cut only once in thirty or thirty-five years, in order to use the wood for burning in manufacturing establishments, and that because of the hilly and swampy nature of the tract near the highway, it was impracticable to cart the wood from the land on to the highway, otherwise than by a way over the grantor's land.

Levi D. Markham, the grantor of the plaintiff's tract, died in 1874, still owning the balance of the original tract, and in 1877 the administrator of his estate conveyed his interest in the balance of the large tract to Martin V. Barnes, and thence by mesne

conveyances it came to one Oscar Knickerbocker, in April, 1898, and in November, 1907, to one Dominico A. Scopino, and thence, in December, 1918, to Frederico Serra, the defendant.

None of the deeds to the defendant's predecessors in title made any mention of the right of a passway across the tract of land which had been granted to the Holmes, Booth and Haydens Company. Neither Knickerbocker nor Scopino had, while in possession of the tract of land, actual knowledge of the grant of a passway nor of any claim in reference thereto, nor did the defendant have actual knowledge of a grant or any claim in reference thereto until some time in April, 1924. As both the dominant and servient tracts were owned by the same predecessor in title when the right of way was created in 1868, the chain of title of each tract runs back to this owner. Therefore, since the deed conveying the easement was on record, the owners of the servient tract who purchased subsequent to the creation of the easement, had constructive notice of the existence of the easement and took title subject to the easement. 9 R. C. L. p. 805, § 61.

Oscar Knickerbocker was the owner and in possession of the land now owned by the defendant from on or about April 22d, 1898, to on or about November 12th, 1907. Some time after Knickerbocker acquired title to the property, he desired to erect a boundary fence separating his land from that now owned by plaintiff, for the purpose of confining his cattle. Knickerbocker thereupon consulted the agent of the Holmes, Booth and Haydens Company having charge of all the real estate of that company. At first the agent declined to pay, as requested, one half of the cost of erecting the fence, and suggested to Knickerbocker that his cattle might run on the company's

land, but finally agreed to pay one half of the expense of erecting the fence. Knickerbocker thereupon caused a four-strand barbed-wire fence to be built along the boundary line of the two properties, and the Holmes, Booth and Haydens Company paid one half of the expense thereof. The fence was built along the division line and over and across the passway as it had been used at the entrance to the property now belonging to the plaintiff. Nothing was said by either, however, about its being built across the passway. After Scopino acquired the land from Knickerbocker in 1907, he caused the barbed wires along the boundary fence to be raised and attached to the bottom low woven wire for the purpose of making the fence sheep proof.

In 1888 and 1889, the Holmes, Booth and Haydens Company cut the wood on the plaintiff's tract and carted the wood out over the adjoining tract now of the defendant, formerly of Levi D. Markham, to the highway. The company in so doing used, without objection or hindrance, a passageway five or six feet wide over the servient tract. Since that time this way has been clearly visible as evidenced by a well defined course of wheel tracks as if used by heavy trucking, and by a small wooden bridge over a small stream, and by bars across the tracks at the entrance into the highway. As the grant of the passway did not fix the route, its location was apparently determined and thus established in accord with the reasonable convenience of the dominant and servient owners, by the practical location and use by the grantee, acquiesced in by the grantor at the time. 9 R. C. L. p. 791, § 48.

No question was raised in this case as to the proper location or use of the passway, nor was there any question as to the grant of a passway to the prede-

cessor in title of the plaintiff. After this use of the passway, the owners of the dominant tract did not use the way, and had no occasion to use the way, and would not have occasion to use it until the wood by natural growth reached a suitable size for cutting for fuel, which the finding discloses would be in thirty or thirty-five years.

This long-continued nonuser by the owners of the dominant tract of the easement of way created by grant did not extinguish it. As to the absence of a duty on the part of the owner of the dominant tract to use a way in order to maintain title to it, the law has been stated as follows: " 'A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land and it is no more necessary that he should make use of it [the easement] to maintain his title than it is that he should actually occupy or cultivate the land. Hence his title is not affected by nonuser, and unless there is shown against him . . . loss of title in some of the ways recognized by law, he may rely on the existence of his property with full assurance that when occasion arises for its use and enjoyment he will find his rights therein absolute and unimpaired.' " *Adams* v. *Hodgkins,* 109 Me. 361, 366, 84 Atl. 530. See also *Arnold* v. *Stevens,* 41 Mass. (24 Pick.) 106; *Seaman* v. *Vawdrey,* 16 Ves. Jr. 390.

In conformity to the law as thus stated, it is uniformly held that an easement created by grant cannot be lost by mere nonuser. *Mason* v. *Horton,* 67 Vt. 266, 31 Atl. 291. In Jones on Easements (Ed. 1898) § 863, the law is stated as follows: "Mere nonuser of an easement created by deed, however long continued, does not create an abandonment" of an easement, hence does not extinguish the easement.

See also Jones on Easements, *supra*, § 864; 9 R. C. L. p. 810, § 66.

Minor & Wurts on Real Property, state the law in § 105, as follows: "Prolonged nonuser of an easement, standing alone, does not suffice to show an abandonment, even though the nonuser continues for twenty years or other prescriptive period. In addition to the mere nonuser, there must be either acts on the part of the owner of the dominant tract, showing an intent to abandon permanently the use of the servient tract, or acts of the owner of the servient tract, showing an intent to obstruct the dominant owner's enjoyment of the easement." See also 9 R. C. L. p. 812, § 68. "So, also, if the servient owner should by adverse acts lasting through the prescriptive period obstruct the dominant owner's enjoyment, intending to deprive him of the easement, he may by prescription acquire the right to use his own land free from the easement." Minor & Wurts on Real Property, § 108, p. 100.

The pleadings disclose that the plaintiff in its complaint alleges that it owns, as appurtenant to its woodland tract, for the purpose of carting wood or any other use, a right of way (as therein described). The defendant denies this and pleads specially, that "Neither the plaintiff, nor any ancestor, predecessor or grantor of the plaintiff, was seized or possessed of the right of way described in the complaint, or any part thereof, within fifteen years before the commencement of this action, but the defendant, his ancestors, predecessors and grantors, have held, occupied and possessed said right of way adversely to the pretended title of the plaintiff for more than fifteen years last past before the commencement of this action, under a claim of title in fee, exclusive of any other right. There has been an actual continued

occupation and adverse possession of said right of way under such claim, for fifteen years last before this action, by the defendant and those under whom he claims as aforesaid.  During all said time said right of way, so occupied, has been improved and used as a pasture and protected and shut off by a substantial enclosure."  Under these pleadings the burden of proof to prove the special matter alleged rests on the defendant.

After finding the facts as set forth above, the trial court drew the following conclusions: "(1) The plaintiff and its predecessors in title have at all times been, seized of the right of passage over defendant's land since the date of its acquisition by Holmes, Booth and Haydens Company from Levi D. Markham.  (2) There was no such open and notorious and adverse use of defendant's land under a claim of right by which defendant has acquired the right to use said land free from said right of passage.  (3) The erection and maintenance of the fence by defendant and his predecessors in title did not constitute an ouster of the plaintiff or its predecessors in title of the right to use said passway.  (4) The plaintiff or its predecessors in title have not lost title to the passway either by abandonment or adverse use."

The defendant claims that under the subordinate facts found the trial court could not either legally or logically draw any of these conclusions.  The question presented to us is whether the trial court could legally and logically draw these conclusions from the facts found as set forth above.  The facts disclose an easement in the plaintiff created by grant, and the plaintiff claims that under the facts found the trial court could not find legally and logically that the easement has been extinguished either by abandonment or by an implied grant to an owner of the servient tract.

Was the easement extinguished by abandonment? Abandonment is well recognized in law as a method of extinguishing an easement. It is, of course, true that an owner of any kind of property may abandon it, and so extinguish his right to it, and no length of time of abandonment is necessary to produce this result. The defendant relies in support of his claim of abandonment upon the acts of Knickerbocker, Scopino and the owner of the dominant tract in relation to the division fence, as establishing, when coupled with the long nonuser of the easement, an intention on the part of the owner of the dominant tract to abandon the easement.

To establish an abandonment of an easement by the acts of the owner of the dominant tract, it is said that his "acts must be of so decisive and conclusive a character as to indicate and prove his intent to abandon the easement." *Hayford* v. *Spokesfield,* 100 Mass. 491, 494. "The abandonment of an easement is a matter of intention on the part of the" owner of the dominant tract. Jones on Easements (Ed. 1898) § 849. Chief Justice Shaw, in *Dyer* v. *Sanford,* 50 Mass. (9 Metc.) 395, 402, states that, to establish an abandonment of an easement, "the proof must go to this extent: First, that the acts relied on were voluntarily done by the owner of the dominant tenement, or by his express authority; secondly, that such party was the owner of the inheritance, and had authority to bind the estate by his grant or release; and thirdly, that the acts are of so decisive and conclusive a character as to indicate and prove his intent to abandon the easement." See also 9 R. C. L. p. 812, § 68.

Reverting to the acts of the owner of the dominant estate when the division wire fence was built and later augmented, could it reasonably be claimed that by consenting to the erection of such fence and paying

one half the cost, the owner of the dominant estate indicated conclusively its intent to abandon the easement? It clearly did not. The court found that the owner of the dominant tract never intended to abandon the easement. This conclusion stands, and is decisive as to abandonment unless we hold that the court could not legally and logically make it under the facts found. We hold that the conclusion was the only one that could be made under the facts. The easement was therefore not extinguished by abandonment. Jones on Easements (Ed. 1898) §§ 849, 851, 852; *White's Bank* v. *Nichols,* 64 N. Y. 65.

The case of *Hayford* v. *Spokesfield,* 100 Mass. 491, is peculiarly pertinent upon the erection of a division fence extending across the way by the owner of the dominant tract. "One having a right of way over another's land does not . . . extinguish it by erecting a board fence five feet high on the boundary of his land extending across such way, or by subsequently placing palings three or four feet high on top of this fence. Such a fence is not a permanent structure, but could be removed with hardly any trouble or expense. It would serve to keep the owner's animals from escaping and the animals of his neighbors from entering upon his land. . . . The structure is so slight and so easily removed, that it is far from being sufficient of itself to prove an abandonment of the easement." Jones on Easements (Ed. 1898) p. 683.

The easement not having been lost by abandonment, there remains for consideration the claim of the defendant that the easement has been extinguished by an implied release; that is, by a release by prescription.

The relative rights of the owners of the dominant and servient tracts, considered in connection with the acts of the owners of the servient and the dominant

tracts, fall far short of showing such a state of facts as is necessary to establish that the owners of the servient tract, by adverse use of a notorious, exclusive and hostile character, obstructed and excluded the owners of the dominant tract so as to form a basis for an inference of a grant, releasing the easement, by an owner of the dominant tract to the owner of the servient tract. *Adams* v. *Hodgkins,* 109 Me. 361, 366, 84 Atl. 430.

The owners of the servient tract have by law all the rights and benefits of ownership consistent with the existence of the easement, and the exercise of such rights is not an adverse or hostile act which gives the owner of the dominant tract a right of action therefor. The owners of the servient tract had, therefore, the right to the possession and use of the land of the servient estate for pasture land. For pasture land they could fence the property, and it was not incumbent on the owner of the dominant estate to remove such fence where it crossed the old way as used. But the wire fence was not built by Knickerbocker as a hostile act; it was built by Knickerbocker in conjunction with the owner of the dominant tract; it would be illogical to call the building of the fence a hostile, adverse act by an owner of the servient tract. The fence was built to protect the pasturage rights, which the owner of the servient tract possessed. The question of the erection of bars and gates where this fence crossed the old way did not arise in this case. Furthermore, the wire fence was a slight obstruction to passage, and the owner of the dominant estate could easily remove the fence if he desired to enjoy his easement.

The wire fence, under all the circumstances, was not such an obstruction to the enjoyment of the easement as called upon the owner of the dominant estate

to proceed in law or equity because of its existence, in order to preserve or protect his easement. It is essential, in order that the user be adverse, that it be such as would give rise to a right of action to the dominant owner, since otherwise he might be deprived of the right without the power to prevent it. "The accrual of the right of action or other legal redress" is "the starting point of a title by prescription." Minor & Wurts on Real Property, § 853.

As stated above, all the acts of the servient owner in regard to the erection of the division fence, were acts that the law permits a servient owner to do, and hence they did not create a cause of action.

Minor & Wurts on Real Property, § 108, make the following general statement of the law: "An easement, once created, is not extinguished by the mere acts of the servient owner in themselves, however adverse they may be to the enjoyment of the easement by the dominant proprietor, and however clearly they may indicate the desire and intention of the servient owner to put a stop to the use of his land. There must be added to those acts other circumstances showing an intention on the part of the dominant owner to abandon or release the easement."

In the case at bar, there were no adverse acts by a servient owner made with intent to stop the use of the right of passway over the servient tract. The mere acquiescence of the owner of the dominant tract in the continued existence of the wire division fence until April, 1924, when it first desired to use the passway after the use of it in 1888 and 1889, falls far short of constituting a sufficient basis for an inference of abandonment of the way or an inference of an implied release of the right of way by an owner of the dominant tract, and the trial court did not err in hold-

ing that there had been no extinguishment of the easement.

There is no error.

In this opinion the other judges concurred.