SEBASTIAN SANTACROCE v. SALVATORE SARACENO

SUPERIOR COURT    MIDDLESEX COUNTY    FILE No. 8821

Memorandum filed January 8, 1946.

*Thomas C. Flood* and *Don Cambria,* both of Middletown, for the Plaintiff.

*Solomon Elsner* and *Aaron Nassau,* both of Hartford, and *Carlos Ellis,* of Middletown, for the Defendant.

COMLEY J. The plaintiff and defendant own adjoining parcels of land on the northerly side of Court Street in Middletown. Two matters of dispute have arisen between them, the first concerning the location of the boundary line between their properties and the second the location and use of a right of way by the defendant across the plaintiff's land. The plaintiff seeks a declaratory judgment as to both questions and also injunctive relief.

The plaintiff's causes of action are separate and distinct and should have been set up in two counts. Practice Book, §33. While each question depends to some extent upon a construction of the same instruments, each is entirely independent of the other and depends for its solution upon wholly unrelated

testimony and legal principles. This defect in pleading will rise to smite the plaintiff when he attempts to draft a judgment file defining those issues which have been found in his favor and those which have been found against him. However, the case has been fully tried and the court will consider and determine the issues.

On April 17, 1833, Samuel Cooper owned a tract of land having a frontage of one hundred and fifteen feet on Court Street. By mesne conveyances this tract came into the ownership of Seth S. Hall, and in the deed to him on April 6, 1860, the Court Street boundary was described as "being about one hundred and fifteen feet."

The first subdivision of this property occurred on February 18, 1871, when Seth S. Hall conveyed the westerly portion of it to J. Peters Pelton and Kate E. H. Pelton. This deed gives the Court Street frontage as forty feet and reserves to the grantor, his heirs and assigns "the right and privilege of inserting timber and other necessary building materials in the wall of the building which may be erected on the premises herein conveyed." About two and one-half years later, on August 1. 1873, J. Peters Pelton and Kate E. H. Pelton mortgaged this property back to Seth S. Hall. Again the Court Street frontage is given as forty feet, and there is a reference to the "new brick stores" on the property.

It would seem that two inferences may properly be drawn from these instruments—first, that between 1871 and 1873 the Peltons erected the first building on the original Hall tract and, second, that this building was placed entirely on the Pelton property so that the easterly wall thereof was in no sense a party wall. This second inference is to some extent supported by the fact that the opposite or westerly wall of the Pelton building was not originally a party wall for, on August 9, 1894, J. Peters Pelton and Frederick M. King quitclaimed a narrow triangular strip on the westerly side of their property to Adam Frankenberger together with "the right to cut into said west brick wall of our said building . . . for the sole purpose of vesting the floor joists of a building he is about to erect. . . ."

From the date of the deed of February 18, 1871, down to October 10, 1941, there are six instruments, not including the mortgage to Seth S. Hall, affecting the Pelton lot, and in all of them the Court Street frontage is given as forty feet.

On October 10, 1941, title to this property stood in Charles L. Bliss and Helen K. Bliss. Bliss had operated a printing business on the property since 1924. This business had been started years before by Pelton and King, for whom Bliss had worked since 1904. Only a few weeks before October 10, 1941, a disastrous fire had gutted the Bliss building and it had been condemned and torn down. Apparently Bliss decided not to resume business. On October 10, he and his wife conveyed the property to Nora T. Blansfield. For the first time in the long list of conveyances, the Court Street frontage was not given as forty feet. The bound in question reads: "Southerly 38.69 feet, more or less on East Court Street." Six days later, on October 16, 1941, Nora T. Blansfield conveyed to the defendant, who now holds under that deed, and, in it, the southerly bound was again recited to be "38.69 feet, more or less, on East Court Street."

Thus there is a long series of instruments from 1871 to 1941 in which the distance on Court Street is uniformly given as forty feet, except that in the latest two, executed within a few days of each other, the distance is reduced to 38.69 feet.

In the meantime the plaintiff's property was originally separated from the Hall tract by a certificate of distribution dated July 6, 1886. This piece was described as bounded "Southerly by Court Street thirty-one feet and six inches." In the mesne conveyances by which title has descended to the plaintiff, the southerly boundary on Court Street is, without exception, given as thirty-one feet and six inches.

The remaining portion of the Hall tract with its original frontage of one hundred and fifteen feet on Court Street was conveyed by Hall's executor under a power of sale in the will to Thomas B. Bent, on March 29, 1887, and the Court Street frontage was given as "about forty-three feet and six inches." This frontage of forty-three feet six inches for the most easterly of the three tracts has apparently been continued down to the present time. It thus appears that until October 10, 1941, the date of the execution of the deed to Nora T. Blansfield, all the conveyances affecting the three tracts accounted for the original one hundred and fifteen feet of frontage, there being forty feet in the defendant's tract, thirty-one feet six inches in the plaintiff's tract and forty-three feet and six inches in the easterly tract. But with the execution of the deed of October 10, 1941,

the frontage of the defendant's tract was reduced to 38.69 feet. The difference between 40 feet and 38.69 feet is 1.31 feet or 15.72 inches. It should be noted here that the deed from J. Peters Pelton and Frederick M. King to Adam Frankenberger did not purport to reduce the Court Street frontage of the defendant's lot by fifteen inches, as the plaintiff seems to claim. That deed merely conveyed a triangular piece having a width of fifteen inches in the rear and coming to a point on Court Street.

Now we come to the deed which has created the trouble over boundary line. By this instrument, dated September 29, 1941, Charles L. Bliss and Helen K. Bliss conveyed to the plaintiff "a certain piece or parcel of land . . . together with all the appurtenances thereon and particularly a certain brick wall," having a frontage of sixteen inches on Court Street and a depth of sixty feet and two and one-quarter inches. It is the plaintiff's claim that this deed conveyed to him a strip of land six inches of which is occupied by one half of the brick wall and ten inches of which lies to the west of the brick wall. It is the defendant's claim that the strip conveyed by this deed is entirely occupied by the brick wall, which is twelve inches wide above the ground and sixteen inches wide below the ground. I feel constrained to uphold the defendant's contention for the following reasons:

a. The brick wall was never a party wall. It was situated wholly upon the Bliss property.

b. When the Blisses conveyed the sixteen-inch strip to the plaintiff on September 29, 1941, the Bliss building had recently been ruined by fire and apparently Mr. Bliss had decided not to resume business or restore the building. The standing wall was of no use to him but it was of great value to the plaintiff. The plaintiff saw this and arranged to purchase the wall from the Blisses. The plaintiff needed the wall, but he did not need ten inches of vacant land lying to the west of it. Likewise, the wall was of no use to the Blisses, but the land to the west of the wall was of value to them and it is difficult to see why they should have intended to dispose of ten inches of it. To construe this deed as conveying the wall and nothing else seems to me to accord with common sense and with the practical needs and desires of the parties as they existed on that date. To construe the deed as conveying one-half the wall plus a vacant strip of

ten inches seems to me to be highly strained and artificial and impresses me as being an idea conceived by the plaintiff after the relations between the parties had become bitter and hostile.

c. When the Blisses, on October 10, 1941, only about twelve days after the execution of the deed conveying the six-teen-inch strip to the plaintiff, conveyed the main tract to Nora T. Blansfield, they were awaree that they had reduced their Court Street frontage by sixteen inches. They, therefore, described that frontage as 38.69 feet, which was accurate within a few hundredth of an inch.

When the plaintiff acquired his land from James J. Hodgson on May 6, 1920, it was recited in the deed that the premises were subject to a certain right of passage as described in a deed from Henry H. Pelton to Hodgson. In the latter deed, Henry H. Pelton reserves to "J. Peter Pelton [who was then the owner of the defendant's land] and his grantees the right to pass with teams or otherwise over said granted premises easterly of the present building, to the rear of said Pelton's building."

Whether this reservation in favor of one who was a stranger to the deed [J. Peters Pelton] was effective to create a right of way by grant is an interesting question, but one which it is not necessary to decide in this case, for there is no doubt that for forty or more years the owners of the defendant's property have in fact used a passway which has run along the easterly side of the plaintiff's building and then continued at an angle in a northwesterly direction across the plaintiff's property to the defendant's land.

And it would appear to make no difference in the decision of this case whether the easement was created by grant or pre-scription, for the language of the reservation is so vague with reference to the location of the passway that its limits can only be ascertained by considering the use actually made of it through the years. See *Lynch* v. *White*, 85 Conn. 545; *Alling Realty Co.* v. *Olderman*, 90 Conn. 241; *American Brass Co.* v. *Serra*, 104 Conn. 139.

No dispute exists as to that portion of the passway, ten feet in width, running along the easterly side of the plaintiff's build-ing. There is also no dispute that from the rear of the plain-tiff's building the passway veered to the northwest toward the defendant's property. It is established beyond doubt that the

passway entered the defendant's property through a gate. The southerly end of this gate was at the northeasterly corner of the old Pelton and King building. The boundary line between the two properties north of the Pelton and King building was marked by this gate and a wooden fence. Various estimates of the width of the gate have been given. I find that it was ten feet in width. I see no reason why the passway should have been wider at the gate than it was along the easterly side of the plaintiff's building. The Pelton and King building ran northerly from Court Street along the line between the two properties for a distance of eighty-nine feet. Therefore, the limits of the passway as it enters the defendant's property is a space of ten feet in width between one point eighty-nine feet north of Court Street and another point ninety-nine feet north of Court Street. That portion of the passway running from the rear of the plaintiff's building to the "gateway" is defined as being ten feet in width and following a course which is, a straight line from the rear of the plaintiff's building to the "gateway."

The defendant is obviously making a wholly unjustified effort to enlarge the limits of the passway and its use. He has no right to use any of the land in the rear of the plaintiff's building for parking or turning or otherwise maneuvering his beer trucks. Apparently his new garage has been so placed that when a truck is backed up to it for loading, the front portion of the truck is on the plaintiff's property. This the defendant has no right to do. He has the right to use the passway, within the limits above defined, for the passage of vehicles, but that is all. The defendant's contention in his brief that he can use "practically all of the open space between the plaintiff's front building and his rear building" is entirely at variance with the use made through the years by Pelton and King, and Bliss, and is unwarranted.

Enough has been said above to indicate the court's decision on the fundamental issues. Counsel for both sides should join in the preparation of a judgment file. If they are unable to agree on the form, they may submit their respective claims to the court.