[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF ATTORNEY TRIAL REFEREE
The undersigned trial referee hereby reports his findings regarding the facts and conclusions drawn therefrom in the above-entitled action:
I. FACTS:
1. The plaintiff is the owner of real property on the easterly side of Quarry Dock Road in the Town of East Lyme, County of New London and State of Connecticut, more particularly described in a deed from her former husband, Michael D. Schultz, to the plaintiff dated April 24, 1981 and recorded in Volume 188, Page 830 of the East Lyme land records.
2. The plaintiff's property is described as two tracts. The "First Tract" extends from the easterly side of Quarry Dock Road to the Niantic River. A single family dwelling is located thereon. The "Second Tract" is contiguous to and southerly of the First Tract, and also extends from the easterly side of CT Page 5425 Quarry Dock Road to the Niantic River.
3. The plaintiff's property extends to the Niantic River and includes the granite retaining wall at the easterly and southeasterly edge of the property where it touches the waters of the Niantic River.
4. The deed into the plaintiff referred to in Paragraph 1 hereof recites that the conveyance is subject to "reservations of right of way, covenants and restrictions in favor of Clara S. Pulsifer, her heirs and assigns, as set forth in Volume 135, Page 545 of the East Lyme land records". That deed, from Clara S. Pulsifer to Michael D. Schultz dated April 20, 1972 and recorded in Volume 135, Page 545 of the East Lyme land records, contains the following reservation and condition regarding the "Second Tract":
 Reserving to the grantor, her heirs and assigns forever the right of way over the second tract herein from Quarry Dock Road to the Niantic River for ingress and egress to the Niantic River, and reserving the riparian rights and uses to the waterfront of said second tract and the use of said second tract for general boating purposes, as an appurtenance to the land of the grantor located west of Quarry Dock Road.
 Provided further that no building shall be constructed on said second tract and no uses shall be permitted thereon which interfere with the right of way and uses thereof reserved by the grantor herein."
5. At the time Clara S. Pulsifer conveyed the plaintiff's premises to her predecessor, Michael D. Schultz, Mrs. Pulsifer owned a parcel of land of approximately 65 acres on the west side of Quarry Dock Road. After the conveyance to Schultz, she conveyed property on the west side of Quarry Dock Road to William H. Wilson, a builder and developer of land, by deed dated June 23, 1973 and recorded in Volume 144, Page 608 of the East Lyme land records. In said deed, she also conveyed to William H. Wilson "the right and easement to pass and repass over premises described as follows and to use the waterfront adjoining said premises for boating and other waterfront purposes:
Beginning on the easterly highway limit of Quarry Dock Road at a point twenty (20) feet northerly as measured along said highway limit from the northwest corner of land now or formerly of Francis X. Frayer and thence running EASTERLY by a line parallel with the northerly line of said Frayer land, and CT Page 5426 twenty (20) feet northerly therefrom as measured by right angles to the waters of the Niantic River and thence running NORTHERLY by the waters of the Niantic River to land now or formerly of Michael D. Schultz designated as first tract in deed from Clara S. Pulsifer to Michael D. Schultz dated April 20, 1972; and thence running WESTERLY by said land of Schultz to the easterly highway limit of Quarry Dock Road; and thence running SOUTHERLY by said easterly highway limit of Quarry Dock Road to the point of beginning."
6. The premises described in Paragraph 5 hereof comprise all of the "Second Tract" of the land owned by the plaintiff except a strip twenty feet in width which runs along the southerly line of the "Second Tract" and the plaintiff's property.
7. Access to the Niantic River waterfront by way of the "Second Tract" was part of the negotiations between Mr. Wilson and Mrs. Pulsifer. Mr. Wilson considered that such access would enhance the value of the land on the west side of Quarry Dock Road and paid what he regarded as a higher price, or "premium" to obtain the easement over the "Second Tract" described in Paragraph 5 hereof.
8. Mr. Wilson thereafter subdivided the 65 acre tract on the west side of Quarry Dock Road and conveyed lots on the subdivision plan, known as "Riverview Estates", to one Ronald Stevens by deed dated October 7, 1977 and recorded in Volume 173, Page 152 of the East Lyme land records. Stevens thereafter conveyed one of those lots, known as Lot No. 7, to Hugh S. Vierling and Ruth L. Vierling by deed dated June 9, 1978 and recorded in Volume 175, Page 1071 of the East Lyme land records. The Vierlings thereafter conveyed Lot No. 7 in "Riverview Estates" to the defendant Caren L. Linden by deed dated July 10, 1981 and recorded in Volume 189, Page 747 of the East Lyme land records. That deed, in addition to describing Lot No. 7 on the subdivision plan, also conveys "the right and easement to pass and repass over [the premises described in Paragraph 5 hereof] and to use the waterfront adjoining said premises for boating and other waterfront purposes", and further provides that the "easements described herein will be for the benefit of the Grantees, their successors and assigns and will run with the land".
9. The defendant Robert Linden, the husband of the defendant Caren L. Linden, claims the right to use the easement over the "Second Tract" of the plaintiff's land as a member of her immediate family.
10. At the time the premises presently owned by the CT Page 5427 plaintiff were purchased from Clara S. Pulsifer, no structures were on the "Second Tract" and no dock was attached to the retaining wall at the edge of the "Second Tract".
11. For a number of years after the premises presently owned by the plaintiff were purchased from Mrs. Pulsifer, people made use of the "Second Tract" by walking to and from Quarry Dock Road to the Niantic River, "enjoying the natural state" of the site and the view of the river, and by fishing and swimming. The plaintiff recognized some of those people as members of families who were entitled to make use of the right of way, but suspected that others were members of the general public who had no right to make use of the easement over the "Second Tract".
12. Several years after a house was built on the "First Tract" of the plaintiff's premises, the plaintiff installed a chain along the frontage of the "Second Tract" where it abuts Quarry Dock Road, and planted small trees and had large stones placed on portions of the "Second Tract" so as to make vehicular access to the waterfront more difficult. The plaintiff's reasons for taking these actions were to restrict the use of the "Second Tract" premises by the general public and to stop flooding on the "First Tract", for landscaping purposes, and to avoid liability. She testified that it was not her intention to block the use of the "Second Tract" by those entitled to use it, and that the chain was capable of being removed and put back into place by those who had a right to use the "Second Tract" premises.
13. Access to the waterfront such as that which is afforded by the right to make use of the "Second Tract" was an important consideration in the defendants' decision to purchase their lot in "Riverview Estates". The defendant Robert Linden has engaged in the sport of rowing as a pastime and means of exercise and relaxation since he was in college. He desired access to water suitable for rowing, and paid what he regarded as additional consideration, or a "premium", for the right of access to the Niantic River.
14. When the defendants purchased their property, access to the "Second Tract" was obstructed by the chain which the plaintiff had installed, and the trees and large stones. The chain was stapled to a tree and wrapped around a tree, and could not be removed easily.
15. The defendant Robert Linden proposed to the plaintiff that the chain be fastened with a padlock, with keys to be distributed to those who have a right to make use of the easement premises, thus affording him access to the easement CT Page 5428 premises while accommodating the plaintiff's desire to exclude those who have no right to make use of the easement premises.
16. The plaintiff did not agree to the proposal to fasten the chain with a padlock, but the defendants have installed such a chain and padlock and distributed keys to several of those who have a right to make use of the "Second Tract". The trees and large stones have been moved to the extent that vehicular access to the Niantic River is feasible.
17. The defendant Robert Linden began making use of the right of way about six months after purchasing his property, transporting his rowing shells to the water's edge by vehicle, but found that it was difficult to place the shells into the water without danger to himself or the shells, which are fragile and liable to be smashed against the rocks constituting the retaining wall. The ordinary or usual method of placing such shells into the water is from a dock which is level with the water. He concluded that a floating dock was necessary.
18. In the spring or summer of 1988, after having obtained permits from the Army Corps of Engineers and the Connecticut Department of Environmental Protection, the defendant Robert Linden caused a floating dock to be constructed, which was connected to the retaining wall at the edge of the "Second Tract" by means of a wooden ramp extending from and affixed to the retaining wall. The plaintiff had opposed the issuance of the permit on the grounds that the "natural integrity" of the "Second Tract" should be preserved, that her scenic view would be impaired and that the dock and ramp would be additional burdens on the "Second Tract".
19. The defendant Robert Linden travelled from Quarry Dock Road to the area of the dock by vehicle in order to make use of the shells, which he initially stored on the ground near the dock. Some time later he caused a rack to be constructed so as to more properly store the shells, which are fragile and expensive, off the ground, where they would not be exposed to water coming over the sea wall and other damage resulting from their position on the ground.
20. The storage rack, a skeletal wooden framework consisting of two uprights and cross members upon which the shells rest, was located on the "Second Tract" near the ramp leading to the floating dock. It was approximately six feet in height, and was visible from the plaintiff's house on the "First Tract".
21. The plaintiff, who regarded the rack and shells as obtrusive of her view, conducive to increased use of the "Second Tract" and not within the terms of the easement over the "Second Tract", had the rack taken down in November of 1990. CT Page 5429
22. Thereafter the defendants caused a second storage rack, similar in structure, size and location to the first storage rack, to be erected on the "Second Tract".
23. Thereafter, in April of 1991, the plaintiff had the second storage rack taken down.
24. There is a partially completed dock or deck located on the retaining wall at the edge of the "First Tract" owned by the plaintiff, consisting of concrete and wooden beams.
25. The plaintiff regards the dock and shell rack on the "Second Tract" as interfering with the view from her house and dock, but does not regard the dock on the "First Tract" owned by her as aesthetically obtrusive or irritating.
26. The defendant Robert Linden testified that he intends to retain the dock and restore the shell rack and that he desires to construct a walkway from the existing level of the ground near the retaining wall to and over the rocks constituting the retaining wall to connect with the wooden ramp extending from the retaining wall to the floating dock. The plaintiff testified that if the defendants restore the shell rack she intends to have it taken down again.
II. CONCLUSIONS:
1. The issue which divides the parties is whether, and to what extent, the defendants can make use of the "waterfront" portion of the "Second Tract" owned by the plaintiff by constructing and maintaining a floating dock, a ramp to the dock, a shell rack and a walkway to the sea wall, all used or to be used in connection with the defendants' storage, launching and docking of rowing shells at that location. The plaintiff contends that the easements set forth in deeds relating to the property restrict the defendants to passing and repassing from and to Quarry Dock Road to the "waterfront" area, and do not contemplate that the "waterfront" be used for anything of a permanent nature such as a dock or a shell rack. The defendants contend that the easements, by their terms, allow general boating purposes and other "waterfront" purposes, and that such purposes include the construction and maintenance of a dock and shell rack. Both parties point to "surrounding circumstances" in support of their respective positions.
2. Relevant easement language is contained in two chains of title. The first (hereinafter referred to as the "Pulsifer reservation") is in a deed from Clara S. Pulsifer to the plaintiff's predecessor in title, wherein she reserved to herself and her heirs and assigns forever the right of way over the "Second Tract" from Quarry Dock Road to the Niantic River for ingress and egress to the Niantic River, also reserving the riparian rights and uses to the waterfront of the "Second CT Page 5430 Tract" and the use of the "Second Tract" for general boating purposes as an appurtenance to her land to the west of Quarry Dock Road. The second chain (hereinafter referred to as the "Linden grant") has easement language in a deed from Clara S. Pulsifer to William H. Wilson and several mesne conveyances, culminating in a deed from Hugh S. Vierling and Ruth L. Vierling to Caren L. Linden, wherein Linden was granted the right and easement to pass and repass over the "Second Tract" and to use the waterfront adjoining the "Second Tract" for boating and other waterfront purposes. (Plaintiff's Exhibit 3, a survey, prepared by Angus McDonald/Gary Sharpe Associates, Inc., has a reference at Note 4 to a deed in favor of Robert A. Linden and Caren L. Linden recorded at Volume 227, Page 360 of the East Lyme land records. Neither party introduced that deed into evidence, and it has not been examined or considered by the undersigned).
3. "For a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. American Brass Co. v. Serra, 104 Conn. 139, 142
(1926)." Mackin v. Mackin, 186 Conn. 185, 189 (1982).
4. The Pulsifer reservation, in addition to addressing a right of way for ingress and egress, reserved the use of the "Second Tract" for general boating purposes, and also reserved riparian rights and uses to the waterfront of the "Second Tract". The reservation unequivocally makes reference to the use of all the land compromising the "Second Tract" for boating purposes. There can be little doubt that the intent and purpose of the reservation is to be inclusive of all boating purposes, whether occurring on the dry land of the "Second Tract" or in the water adjacent to the land.
5. The intent and purpose of the Pulsifer reservation being inclusive of boating and other waterfront purposes, it must be construed to allow activities such as mooring a boat, constructing a dock and storing equipment incidental to the use of boats. The defendants' construction of a dock and shell storage rack and proposed walkway to the dock ramp are activities which fall within the range of boating and other waterfront purposes.
6. The plaintiff argues that while the Pulsifer reservation may be broad in its terms, the Linden grant is more restrictive and can be read to prohibit use of the "Second Tract" for boating purposes. In support of this, she points to the absence of docks or racks at the time the Linden grant language first appeared in the deed from Pulsifer to Wilson, and parses CT Page 5431 the Linden grant so as to separate the right to pass and repass through the "Second Tract" from the right to use the waterfront for boating purposes, observing that the word "general" is not present in the Linden grant's reference to boating purposes. From this, the plaintiff infers that the defendants acquired less than the full measure of rights reserved by Pulsifer regarding the use of the "Second Tract" for boating purposes.
7. The plaintiff asserts that because the easement was not being used for boating purposes either at the time of the Pulsifer reservation or the Linden grant, it cannot be used for such purposes now. This agreement, however, ignores the specific reference in both chains of deeds to "general boating purposes" and "boating and other waterfront purposes". When Mrs. Pulsifer created the easement, there is no doubt that boating activities were within her contemplation, whether or not they were actually ongoing at that time. The "surrounding circumstances" (absence of boating activity) cannot overcome the unequivocal references to boating in the easement deeds.
8. Mere nonuse of an easement created by deed, however long continued, does not create an abandonment. Schroeder v. Taylor, 104 Conn. 596, 604 (1926); Toms v. Settipane,30 Conn. Sup. 374, 377 (1973). The nonuser must be accompanied by circumstances clearing indicating an intention to abandon the easement. Toms v. Settipane, supra at 377. The plaintiff has adduced no evidence that the defendants or their predecessors in title have abandoned or relinquished use of the easement premises for boating purposes. The defendants are not required to make actual use of the easement for boating purposes to preserve their right to do so. American Brass Co. v. Serra,104 Conn. 139, 145 (1926).
9. The plaintiff points to variations in the language of the Pulsifer reservation and the Linden grant and argues that Mrs. Pulsifer must have intended to limit the use of the "Second Tract" to passing to and from Quarry Dock Road and the Niantic River, and to confine boating, swimming and waterfront activities to the waters of the river. In this regard, she considers that the presence of the word "general" in the Pulsifer reservation and its absence in the Linden grant is significant. In the context of this case, however, it is a distinction without a difference. There is a clear and unequivocal reference to "boating and other waterfront purposes" in both deeds. While the word "general" may be absent from the Linden grant language, the Court cannot ignore the presence of the reference to boating and waterfront purposes in that same language. The Linden grant, standing alone, is sufficient to support a conclusion that boating and waterfront purposes fall within the ambit of allowable easement CT Page 5432 activities.
10. The plaintiff asserts that "waterfront" activities refer to the use of the water adjoining the easement premises rather than the land comprising the "Second Tract". Language of deeds will be given its ordinary import, in the absence of anything in the situation or surrounding circumstances to indicate a contrary intent. American Brass Co. v. Serra, 104 Conn. 139,142 (1926). The Random House Dictionary of the English Language defines waterfront as "land on the edge of a body of water". The common and ordinary meaning of "waterfront" uses being those uses which occur on land, and considering that boating and waterfront uses include activities such as constructing and maintaining docks and storage of boating equipment, it must be concluded that the defendants' present use and proposed walkway on the portion of the "Second Tract" which is adjacent to the Niantic River falls within the boating and waterfront purposes set forth in the easement language.
11. The undersigned does not find that the reference to "waterfront uses" creates any doubt or ambiguity. However, even if it is assumed arguendo that the reference to "waterfront" creates a doubt as to whether it means the water or the land, it must be noted that "in the construction of an instrument creating an easement, ambiguous language, in a case of reasonable doubt, will be construed in favor of the grantee rather than the grantor". Gager v. Carlson, 146 Conn. 288, 298
(1959). Even if the "waterfront" reference could be said to create a reasonable doubt as to its meaning, that doubt must be resolved in favor of the defendants.
12. The plaintiff suggests that the proviso that no building shall be constructed on the "Second Tract" precludes the construction and maintenance of the shell storage rack. That rack, however, consists of two wooden posts approximately six feet in height, to which are affixed wooden cross members which support the shells. It is skeletal in nature, enclosing nothing, having no walls or roof. The undersigned does not find that the shell rack is a building on the "Second Tract".
13. The plaintiff raises the spectre of a "small marina with electricity, buildings for storage or perhaps a bathhouse" if the defendants prevail. Those issues are not before the Court at the present time. The Court can only respond to the situation which is presently before it, and the undersigned need not address the issue of possible future uses of the "Second Tract". Similarly, the possibility that some use may be made of a portion of the "Second Tract" which is further west than the area presently being used and proposed to be used by the defendants is not before the Court, and the undersigned CT Page 5433 need not consider or find that any other portion of the "Second Tract" qualifies as "waterfront" within the meaning of the easement. Similarly, although the defendants suggest in their trial brief that a "storage shed" may be among the uses which should be protected, there was no testimony that the defendants plan to erect such a structure, nor does such a structure presently exist. Consequently, the undersigned does not address the issue of whether a "storage shed" is an appropriate use of the easement premises.
14. The plaintiff notes that the language of the Linden grant is less expansive than the language of the Pulsifer reservation, and infers that Mrs. Pulsifer must have intended to retain for herself some undefined portion of boating or waterfront rights rather than pass them on to others. This may or may not be so, but in actions such as this courts must be guided by the deed language read in light of the surrounding circumstances. "The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances, . . ." Kelly v. Ivler, 187 Conn. 31,38 (1982).
15. The owner of an easement is entitled to relief upon a showing that he will be disturbed or obstructed in the exercise of his right. Wambeck v. Lovetri, 141 Conn. 558, 564 (1954). Injunctions are frequently used to regulate the use of rights-of-way and easements, e.g. Sachs v. Toquet, 121 Conn. 60
(1936; Birdsey v. Kosienski, 140 Conn. 403 (1953). An injunction is the proper remedy to stop interference with the use and enjoyment of an easement. Peckheiser v. Tarone,186 Conn. 53, 60, 61 (1982); Gerald Park Assn. v. Bini, — Conn. 232, 236 (1951).
16. The plaintiff, by taking down the shell rack, has interfered with the defendants' lawful exercise of their easement rights. The plaintiff testified that she does not intend to obstruct passage and repassage to and from Quarry Dock Road and the Niantic River by those entitled to make use of the easement premises, including the defendants. If she were to take action to obstruct such passage, she would be interfering with the lawful exercise of the easement rights of the defendants. If the plaintiff confronts the defendants while the defendants are passing or repassing on the easement premises or while the defendants are engaged in their present use or constructing the proposed walkaway on the easement premises for boating purposes, and verbally berates or harasses them during such time, she would be interfering with the lawful exercise of the easement rights of the defendants. CT Page 5434
17. The undersigned recommends that judgment enter as follows:
On the complaint: Judgment for the defendants.
On the cross-complaint: Judgment for the defendants that the plaintiff and her agents, servants and employees be enjoined from obstructing or interfering with the defendants' passage or repassage over the easement premises from and to Quarry Dock Road and the Niantic River, that the plaintiff and her agents, servants and employees be enjoined from obstructing, interfering with, tearing down or otherwise removing the presently existing floating dock and ramp affixed to the retaining wall on the easement premises, or a shell storage rack similar in structure, size and location to the storage rack previously existing on the easement premises, or a walkway proposed to be placed on the easement premises leading from the ground level near the retaining wall over the stones constituting the retaining wall and connecting with the ramp leading to the floating dock. Further ordered that the chain across the frontage of the easement premises at Quarry Dock Road be allowed to remain in place so long as it is fastened with a padlock and keys to the padlock are provided to all persons, including the plaintiff, who have a right to make use of the easement premises.
RESPECTFULLY SUBMITTED, EDWARD B. O'CONNELL ATTORNEY TRIAL REFEREE