JOHN H. ROWELL vs. WILLIAM S. DOGGETT.

Worcester.    Oct. 6, 1886. — Feb. 23, 1887.    DEVENS & W. ALLEN, JJ.,
absent.

In 1853, A., the owner of land abutting on H. Street, conveyed the rear portion of
it to P. by a deed giving to the grantee, his heirs and assigns, "the right to a
passage through to H. Street eighteen feet wide," and describing one of the side
lines thereof.   The deed also provided that P. "is not to injure or destroy any
fruit trees now in a bearing state."   At the time of this conveyance, there was
no other access to the land from a street; but in 1857 P. acquired by purchase
a right of way from the land to another street; and in the same year he built
a fence on the boundary line between his land and that of his grantor, which
enclosed the eighteen-foot strip, and put a gate four feet wide in the fence at
one end of the strip.   For some years before the grant, at the time of the grant,
and until 1883, there was a footpath, which entered the eighteen-foot strip at
the place where the gate was put in 1857, and then wound round among the
fruit trees to the street.   During this time the eighteen-foot strip was imprac-
ticable for use as a carriage-way, and could not be made practicable without
injuring fruit trees which were in a bearing state in 1853, nor without much fill-
ing in and grading.   In 1857, P., while he held the land, stated to a grantee of A.
that he, P., had a footway through the land to H. Street, and that A.'s grantee
might use the land to the footway as he saw fit.   In 1883, a grantee of P., after
P.'s death, attempted to make the eighteen-foot strip available for a carriage-
way.   Held, on a bill in equity by the grantee of A. to restrain him from so
doing, that the evidence of the facts above stated was admissible to interpret
the grant to P.; that the declarations of P. were admissible; and that the
plaintiff was entitled to a decree.

BILL IN EQUITY, filed July 2, 1883, to restrain the defendant
from doing certain acts and making certain changes on the land
of the plaintiff in Clinton, and constructing a carriage road over
it, within defined limits, over which the defendant claimed a
right of way.   The case was referred to a master, whose report
was in substance as follows:

In 1853, one T. W. Lewis owned a parcel of land in Clinton,
lying easterly of High Street, and abutting thereon.   In that
year he conveyed that part of the land lying farthest from the
street to James Patterson, by a deed containing the following:
"Said J. Patterson, his heirs and assigns, shall forever have the
right to a passage through to High Street eighteen feet wide,
and bounded on the south by the line between said Lewis and
A. Knight, but is not to injure or destroy any fruit trees now in
a bearing state.   Said J. Patterson is to build and keep in repair

the fence between him and said Lewis." At the time of this conveyance, there was no means of access from a public street to the land conveyed except over the passageway granted. In 1857, Patterson, by the purchase of another piece of land, acquired a right to pass to Walnut Street, a public street lying easterly of the lots in question.

In 1857, the plaintiff acquired title, through mesne conveyances, of the remaining land of Lewis, subject to the right granted to Patterson.

Patterson died in 1865; and in 1879 the executor of his will conveyed to the defendant the lot conveyed by Lewis to Patterson, together with all the land lying easterly of it to Walnut Street.

Patterson in the spring of 1857 built a fence extending the whole length of the division line between the lots now owned respectively by the plaintiff and defendant, with a gate not over four feet in width at the southerly end of the fence, next to the adjoining land of A. Knight. This fence, which extended across the whole width of the passageway, was maintained in substantially the same position continuously until July, 1883. At the time of building this fence, and for many years previously, as far back as 1849 or 1850, there had been a footpath from the lot now owned by the defendant to High Street, and the gate was placed at the southerly end of the fence built by Patterson, so as to accommodate this footpath. The path entered the plaintiff's lot near the southerly side of the eighteen-foot passageway, passed south of two apple trees which stood within about three feet of the southerly side of the plaintiff's lot and near the gate, and then turned towards the northerly side of the eighteen-foot passageway, and so on to High Street. The plaintiff's lot was originally quite rough and ledgy, with a steep descent towards High Street; and especially at a point about one third of the distance down the lot, and just above the plaintiff's house, where a ledge cropped out from north to south, there was a descent of about five feet in a distance of twelve feet. The evidence proved to the satisfaction of the master that it would be impossible to construct a practicable way for vehicles over the passageway, without a considerable cut or fill, or both, at this point at least, in the descent.

Five apple trees are now standing on the lot which were standing there when the grant of the passageway was made to Patterson, and one which was then standing was cut down by the plaintiff about twelve years ago. Of these six trees all but the two already mentioned as near the gate in the fence were proved to be in bearing condition at the time of the said grant; but in reference to those two the evidence on this point was uncertain. Two of the six trees were situated just above or east of the ledge; one of the two three feet north of the southerly line of the passageway, and the other directly opposite to it, and close to and either just north or just south of the northern line of said passageway. The footpath appeared to have turned northerly after passing the two trees near the gate, to avoid the southerly of these trees near the ledge, the branches of which spread widely and near the ground; and, before the northerly tree was cut down by the plaintiff, the branches of the two trees intertwined across the passageway so that it was difficult for a person to pass between them in the footpath with an umbrella spread open, and it would have been impossible to pass through with any vehicle without cutting away the branches of the trees.

The house of the plaintiff stands near the westerly end of his lot with its front nearly bounding on the northerly side of the passageway. About twelve years ago the plaintiff built a barn on his lot easterly from and adjoining his house, and extending about to the ledge mentioned; and, in order to get access to his barn, he excavated and graded somewhat the land easterly and southerly of his house, so as to make over the passageway and his other land a practicable road to the barn. Before this, it had been impossible to pass beyond the house easterly with vehicles in the passageway. After making the excavation, the plaintiff built a retaining wall from the easterly side of his barn southerly, along the westerly side of said ledge, and extending a few feet within the eighteen-foot passageway. At the termination of this wall he erected a flight of wooden steps where the footpath reached the ledge for the accommodation of those using the passageway; and at the same time he cut down the apple tree mentioned, which stood near this wall. The plaintiff used the passageway for planting grass and vines, excepting the part occupied by the footpath, from the time of his purchase of the land

to August, 1883; and for over twenty years before the last date he maintained clothes-posts within the limits of the passageway, but about two feet northerly of the foot-path, and used them for hanging out clothes to dry.

The plaintiff was permitted to prove, and did prove, against the objection of the defendant to the admission of the testimony, that Patterson, soon after the plaintiff bought his lot, told him that he, Patterson, had a footway through the land to High Street, and that the plaintiff might use, occupy, and plant the land as he saw fit, up to the footpath; and that he told several other persons that he had a footpath through the plaintiff's land to go to the post-office, market, &c.

The plaintiff was also permitted to prove, and did prove, against the objection of the defendant, that about July 2, 1883, the defendant went on to the plaintiff's land with his agents; cut down and took away so much of the fence between the plaintiff's and defendant's lands as extended across the eighteen-foot passageway; took away the steps; filled and graded westerly from the ledge for a distance of about twelve feet, with material which he brought from his own land, to a depth next the ledge of about four feet and nine tenths; cut off a limb from the apple tree next above the ledge which extended across a portion of the passageway, and which was about ten inches in diameter near the trunk of the tree where it was cut off; took up and removed the clothes-posts; and turned the retaining wall round to a right angle with its former position, so as to support the material brought on for the purpose of filling and grading the passageway west of the ledge; and that the effect of this grading was to turn back the surface water, which before had flowed away from the barn, towards and upon the house and barn of the plaintiff. These acts were done by the defendant for the purpose of making the passageway passable for vehicles from his lot to High Street, and were necessary for that purpose.

The master found, upon these facts, that the clause in the deed to Patterson, according to its true construction and intent, granted only a footpath within the eighteen-foot limits from his land to High Street; and that, if a passageway for vehicles was granted by said clause in his deed, the evidence of non-user and the accompanying acts and words of Patterson showed an

abandonment or surrender of the right to use the passageway for that purpose.

At the request of the parties, the master also reported the following facts agreed upon by them : High Street in 1853 was, and still is, a business street in Clinton, whereon the principal shops and stores are located. Walnut Street in 1853 was, and still is, occupied by private residences and public buildings, and has convenient and direct connection with High Street. A tenement house was built by the defendant on the lot conveyed by Lewis to Patterson, in 1882 and 1883.

The case was then heard, by a single justice of this court, on the report of the master, and a decree was entered that the defendant be perpetually restrained from using the right of way as a drive or carriage way, or from making any changes on the surface thereof for such use. The defendant appealed to the full court.

*F. P. Goulding & C. G. Stevens*, for the defendant.

*J. W. Corcoran*, for the plaintiff.

GARDNER, J. The contention between the parties is whether the easement granted to Patterson is limited to a footway, or whether it is for horses and carriages as well as for foot passengers.

A grant of way over one's own premises, without limitation or restriction, is understood to be a general way for all purposes. But, in construing such a grant, reference is to be had to the nature and condition of the subject matter of the grant at the time of its execution, and the obvious purposes which the parties had in view in making it. Washburn on Easements, (4th ed.) 254. Where the words of a deed are ambiguous, and not explainable by the context, the construction given to the words themselves, as shown by the way and manner in which the parties exercised their respective rights, is legal evidence. If a passageway granted by deed has been used in a certain mode from the time of making the deed to the time of an alleged trespass, without any objection being made, this evidence is admissible to show what was intended by the grant. *Choate* v. *Burnham*, 7 Pick. 274.

In the case at bar, if there was any restriction in the grant upon the use of the way, which rendered it doubtful as to the manner in which it was to be used, then evidence of the character above referred to was, at least, admissible.

Although Patterson by the deed had a right to a passage eighteen feet wide, yet in making use of the passage he was not to injure or destroy any fruit trees then in a bearing state. He was to use it in a reasonable way consistent with the nature and condition of the premises over which he had the right of passage. What is a reasonable use of a way, where the purposes are not defined in the grant, is a question of fact, to be determined upon evidence. Washburn on Easements, 282. The grant in the case at bar cannot be construed by the language of the deed. Resort must be had to extrinsic evidence to determine it. If it should appear that the way was closely planted with fruit-bearing trees, so that it would be impossible for horses and carriages to pass through the way without injuring and destroying the trees, it would, at least, be evidence tending strongly to show that the parties never intended that the way should be so used.

The declarations of a deceased former owner of land, made during his ownership, and tending to prove the existence of a right of way over it, are competent evidence against the present owner. *Blake* v. *Everett*, 1 Allen, 248. These are admitted upon the ground that they are against the owner's interests and in disparagement of his title. So far as the declarations in the case at bar went to the effect to disparage Patterson's title to the easement which he was then using, and to limit its use to a footway, being against his own interests, we think they were admissible. They were made while he was using the passage as a footway. *Pickering* v. *Reynolds*, 119 Mass. 111. At the time of the trial Patterson was dead. At the time of the execution of the deed to Patterson, there was a footpath from the land now owned by the defendant to High Street, and this footpath had been in existence since 1849 or 1850. In 1857, three years after the execution of the grant to Patterson, he built a fence, along the entire line, between his lot and that of his grantor Lewis, extending it over the eighteen-foot passageway and leaving a gate about four feet in width at the southerly end, in order to accommodate the footpath. The fence, with the gate, was maintained substantially in the same position continuously for a period of twenty-five years, or until 1883, when the acts of the defendant complained of were committed. The footpath as it existed in 1849 or 1850, in 1853 at the time of the grant, and

as subsequently used until 1883, entered the eighteen-foot strip at its southerly side, and then turned towards the northerly side, winding around and between the growing trees. The eighteen-foot passage at the time of the grant was rough and ledgy, and it would have been impossible to construct a practicable way for vehicles without a considerable cut or fill, or both, at one point at least. At the time of the grant five apple trees stood on the passageway, some of which were in a bearing condition. They stood in such a position that it would have been impossible to pass through with a vehicle without cutting away their branches. Before one of the trees was cut down, in 1873 or 1874, the branches intertwined with those of a neighboring tree across the passageway, so that it was difficult for a person to pass between in the footpath with an umbrella open, and it would have been impossible to pass through with any vehicle without cutting away the branches of the trees.

We think, from the nature and condition of the passageway at the time of the grant, that it was then a footway winding through the eighteen-foot strip, from one side to the other, in order to avoid the bearing trees, and that it had been used for several years before, as it was at the time of the grant, that it was then and had been impassable for vehicles, and that the obvious purpose which the parties had in view in making it was as a way for foot passengers, and not for horses and carriages. We are confirmed in this opinion by the subsequent acts of the parties during nearly twenty-five years.

The defendant argues, that, as the land of Patterson at the time of the grant had no connection with any public way except over the grantor's land, a way of necessity for all suitable purposes would have been implied in the absence of any express terms. But the grant that carries with it a right of way of necessity does not necessarily imply a carriage-way, even though the thing granted be a house. Washburn on Easements, 272. In 1857, four years after the deed to Patterson, he acquired the right to pass out to Walnut Street, a public street lying east of the lots in question. At that time the right of way by necessity ceased. A way of necessity ceases as soon as the necessity ceases. *Viall* v. *Carpenter*, 14 Gray, 126. *Abbott* v. *Stewartstown*, 47 N. H. 228.                       *Decree affirmed.*