GEORGE H. PECK *vs.* JOHN MACKOWSKY.

First Judicial District, Hartford, January Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

If a right of way be reserved over one piece of land to another piece, retained by the grantor, it is appurtenant to the piece retained and every part of it.

The character and extent of a right of way created by reservation is to be measured by the language of the instrument; if that language is ambiguous, it is to be read and interpreted in the light of the situation of the property and the surrounding circumstances, and with the purpose of ascertaining and giving effect to the intention of the parties.

A reservation was made of a "right of passway from the highway on the east to my land west of the railroad as now used." *Held* that this defined the location of the way rather than the use to which it might be put.

The reservation of a right of way in general terms must be construed to cover any reasonable use to which the land may be devoted.

The restraining order of the court interpreted as not forbidding the maintenance of such gates, readily opened and shut by a rightful user of the way, as might reasonably be required in the defendant's use and occupation of his premises.

Argued January 2d—decided February 9th, 1912.

SUIT to restrain the defendant from obstructing a right of way alleged to belong to the plaintiff, and also for damages, brought to and tried by the Court of Common Pleas in Litchfield County, *Welch, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

January 12th, 1864, one Benham Barber was the owner of a tract of land containing upward of forty acres, situated in the town of Litchfield, as the town boundary lines then were, but now in Torrington. It had been acquired by him in two pieces. One of about sixteen acres, and hereinafter designated as the first piece, was bounded on the east by a highway and on the west by the Naugatuck railroad. The other, hereinafter referred to as the second piece, containing about twenty-five acres, lay on the opposite side of the railroad right of way, and extended from the railroad westerly. It touched no highway at any point. From the highway, above referred to, bounding the first piece on the east, there was a passway, extending in a circuitous route across the first piece to the second.

On said January 12th, 1864, Barber conveyed the first piece to Ann Delowery by a warranty deed which contained the following reservation: "I reserve for myself, my heirs and assigns forever a right of passway from the highway on the east to my land west of the railroad as now used." Barber continued in the ownership of the land west of the railroad, being the second piece, until his death in 1877. In the distribution of his estate, this tract was set to his son, Frederick, no mention being made of the passway. By sundry conveyances, the plaintiff became the owner of it before November 7th, 1900. In none of these conveyances is the passway referred to. November 7th, 1900, the plaintiff conveyed to one Turner the larger portion of this tract, but retained about six acres of it. In this deed, the plaintiff reserved for himself, his heirs and assigns, a right of way and passway twenty feet in width from the land retained over the land conveyed, and to the highway, "in the same passway as is now used by said grantor." At the time that Barber made his conveyance to Ann Delowery, he had no means of

access to a highway from the tract retained, except over the passway, and it has ever since been, and now is, so that such access could not and cannot be had by the owner thereof, except by passing over the land of other persons without right.

The title of the first piece, conveyed to Ann Delowery as stated, came into the defendant July 7th, 1910, and he has since been its owner in possession. His predecessor in title, at some time during his ownership, which began in November, 1902, built a house and barn on the premises, locating them on opposite sides of the passway and some three hundred feet from the highway. Between the house and barn was placed a barnyard in which the defendant keeps his pigs. It is so located that the line of the passway extends directly through it. For some time prior to June, 1910, there was a gate on each side of this yard in the line of the passway. These gates the plaintiff and his employees opened and closed in their passage over the way.

The line of the passway has remained unchanged. Barber, both before and after his conveyance to Ann Delowery, used it for the cartage of farm produce, manure, wood, and such other products of the land of the second tract as he desired, to and from the highway from and to that tract. A subsequent owner or two quarried stone upon the tract, and hauled it over the passway to the highway. The plaintiff, soon after his purchase, constructed a dam upon a stream which flows across that portion of the tract which he now owns, ponded the waters, and built an icehouse, and has since cut and stored ice on the premises, and carted the same, as desired, over the passway to Torrington, for sale in the conduct of an ice business. He has also quarried stone on the land he owned, and used the passway for hauling it to market, as also for the cartage of wood and farm products.

In June, 1910, the defendant, or some member of his family, locked said gates, and he then refused, and ever since has refused, to permit the plaintiff and his agents and employees to use the passway, although the use thereof has been demanded, all of which has been to the great inconvenience and financial damage of the plaintiff.

*William Kennedy* and *Spotswood D. Bowers,* for the appellant (defendant).

*Walter Holcomb,* for the appellee (plaintiff).

PRENTICE, J.   Whatever right of way the plaintiff, as the owner in possession of his six-acre tract, may have over the defendant's land has its origin in the reservation made by Benham Barber in his deed of January 12th, 1864, to Ann Delowery, the defendant's predecessor in title, and its character and extent is measured by that reservation.   He asserts a no greater right, and rightfully claims one commensurate with the easement Barber reserved.   It is clear that the easement of way so reserved was not a personal one, but one appurtenant to the twenty-five-acre tract of which Barber retained the ownership.   *Blanchard* v. *Maxson,* 84 Conn. 429, 433, 80 Atl. 206.   As such, it attached to each and every part of that tract, and the benefit of it passed to the plaintiff, as a successor in title to Barber of the entire tract, and remains in him as the present owner of the six-acre portion of it.   *Blanchard* v. *Maxson,* 84 Conn. 429, 434, 80 Atl. 206.

For a determination of the character and extent of the easement reserved by Barber, we must look to the language of his deed, and, if that language is in any respect uncertain or ambiguous, then to that language as read in the light of the situation of the property and

the surrounding circumstances, to the end that the intention of the parties may be ascertained and given effect. *Sweeney* v. *Landers, Frary & Clark*, 80 Conn. 575, 578, 69 Atl. 566. "In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view." *Walker* v. *Pierce*, 38 Vt. 94, 97; *Rowell* v. *Doggett*, 143 Mass. 483, 487, 10 N. E. 182. When the deed is so read and construed, it is reasonably apparent that the words "as now used," with which the reservation concludes, were employed to designate the location of the way, and not to define or restrict the use to which the way might be put. The grant thus becomes one defined in general terms, and without express limitation as to the character of the user.

Such a grant is to be construed as broad enough to include any reasonable use to which the land might be devoted. *Abbott* v. *Butler*, 59 N. H. 317, 318. "A right of way granted or reserved in general terms may be used for any purpose reasonably necessary for the party entitled to use it. . . . The grant being general in terms, it must be construed to include any reasonable use to which the land may be devoted." Jones on Easements, § 375; *Gillespie* v. *Weinberg*, 148 N. Y. 238, 240, 42 N. E. 676; *Watts* v. *Johnson R. E. Corp'n*, 105 Va. 519, 525, 54 S. E. 317; *Shreve* v. *Mathis*, 63 N. J. Eq. 170, 178, 52 Atl. 234; *Gunson* v. *Healy*, 100 Pa. St. 42, 46.

In the present case, the plaintiff has never undertaken to use the passway, except in connection with the utilization of his premises as land. He has attempted to make it profitable to himself by appropriating and developing the natural resources there present. Whether he has sought to do so by cultivating the soil

or by cutting wood, or by quarrying stone, or by making use of the stream which passes through it and the ponding facilities it furnished for the production and harvesting of ice, and has used the passway as incidental to the conduct of these enterprises, he has done nothing more than to undertake to make the most of the resources with which nature has endowed his land. Clearly he has not transgressed his right in attempting to avail himself of the use of the passway in the reasonable conduct of these endeavors.

The only issue presented by the pleadings was as to the existence in favor of the plaintiff of a right of way over the defendant's land, as defined in the Barber deed. The determination of this issue in the affirmative justified the court in issuing its restraining order and in awarding damages. The question of the extent of the plaintiff's right of user was, however, directly involved in the award of damages made. We have therefore dealt with the underlying question of the case in that broader aspect of it which is decisive of the ultimate rights of the parties, as well as of the correctness of the judgment.

The language of the judgment defining the acts forbidden to the defendant was unhappily chosen, and lacks that precision which should mark injunctive orders. The court could scarcely have intended to prohibit the defendant from maintaining in the line of way such gates, readily opened and closed by a rightful user of the way, as were reasonably required for the use and occupation by the defendant of his premises. And yet the order might be understood as forbidding the maintenance of such gates. The appeal makes no complaint of the terms in which the order is couched, either as to its uncertainty or its scope. We might, therefore, properly ignore that subject. But in view of the importance of avoiding misunderstandings and

possible controversy in the future, we feel constrained to say that the true intent and meaning of the order is, not that no gates, although reasonably required by the defendant in the use and occupation of his land and suitably constructed to permit their ready use, may be maintained by the defendant in the line of the passway, but that none shall be there maintained of such a character as to be an obstruction to travel, in the fair intent and meaning of that word as related to a situation such as the case presents. The court unquestionably had in mind the barred gates which the defendant was maintaining, and undertook to deal with that situation, among others. Its purpose was to forbid the maintenance of any and all constructions or artificial conditions which might properly be regarded as creating an obstruction to free passage at pleasure; and its order should be so construed.

There is no error.

In this opinion the other judges concurred.