[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Background
The parties in this case are adjoining landowners on Candlewood Lake in New Milford, CT. The plaintiffs' home and and land is generally south of the defendants' home and land. The plaintiffs are seeking:
1. An injunction, both temporary and permanent, enjoining the CT Page 13623 defendants from blocking or impeding their right of way over and across the property of the defendants whether by closing a gate, or verbally accosting the plaintiffs, or by communicating to third parties that they have no right to use the easement to obtain access to the plaintiffs' property.
2. An injunction, both temporary and permanent, enjoining the defendants from interfering with or attempting to interfere with the right of the plaintiffs and their agents to come onto the property of the defendants for the purpose of cleaning, repairing, or renewing the septic system serving the plaintiffs' property.
On August 21, 1987, the plaintiff, Peter R. Henning, purchased the Henning property, and on March 22, 1995 he quit-claimed it to himself and to the co-plaintiff, Donna Henning.
The septic system which serves the plaintiffs' property is located on the defendants' property.
The plaintiffs claim that the defendants are interfering with their easement right to pass over the defendants' property for the purpose of gaining access to the public highway. (First Count)
The plaintiffs also claim that the defendants are interfering with their easement rights to go onto the defendants' property to maintain, repair and renew their septic system. (Second Count)
Discussion
After considering the testimony given at trial, the various exhibits introduced into evidence, and the briefs submitted by counsel, the court, having evaluated the credibility of the witnesses, finds the following facts.
A. Right of Way To Public Highway
The plaintiffs have a right of way ten feet wide to pass and repass from their property across the defendants' property to the public highway. (Plaintiffs' Exhibit 8). There is a gate with gateposts at the boundary line between the two properties, so situated that at least one of the gateposts is in the right of way, and the gate itself, if closed, interferes with the CT Page 13624 plaintiffs' passage over the right of way. The defendants have been closing the gate, thereby interfering with the plaintiffs' right of way. The presence of the gateposts, even if the gate itself is open, has narrowed the plaintiffs' use of the right of way to fewer than ten feet. Counsel for the defendants agreed, in final argument at trial, that the defendants would move one post so that neither post encroaches upon the ten feet right of way. The defendants have also admitted, in paragraph 2 of their Amended Answer the existence of this easement benefitting [benefiting] the plaintiffs' property, and burdening theirs.
The defendants have occasionally been closing the gate at the property line and have attempted verbally and by use of signs to discourage and prevent delivery and repair people from having access to the plaintiffs' property. The closing of the gate also interferes with the plaintiffs' unencumbered use of the right of way. Frequently, when it snows or is muddy, the gate cannot be fully opened. The plaintiff Donna Henning, is an airline hostess, and she occasionally arrives home late at night alone. When the gate is closed, Mrs. Henning has to get out of her car to open it, and because this property is in a wooded, secluded area, she is concerned about her safety and security.
The defendant Romeo has placed rocks in front of the gate on the right of way and has used abusive language toward the plaintiffs.
The gate, when closed, does not benefit the defendants at all. The only effect is to obstruct the plaintiffs' right of way.
B. The Septic system Easement
The plaintiffs have an easement to maintain "a septic tank, pipes, drains and fields used in connection" with their dwelling, which is located on the defendants' property, and a further right to enter upon the defendants' property "at any time, for the purpose of repairing or renewing said septic tank." This easement was granted to the plaintiffs' predecessor in title in a warranty deed from Adrian Van Muffling to Joseph C. Lynch, dated May 21, 1938 and recorded in Vol. 95, Page 176 of the New Milford Land Records, also on May 21, 1938. The language granting the easement reads as follows:
 Together with the right and privilege to the grantee, his heirs, administrators and CT Page 13625 assigns, to maintain as presently located the septic tank, pipes, drains and fields used in connection with the dwelling house on the premises herein contained and located on other premises of the grantor immediately adjoining the within described premises on the north, and to enter upon said premises at any time for the purpose of repairing or renewing said septic tank, pipes, drains and fields and to do such digging and to make such excavations as may be necessary therefor, provided no unnecessary damage shall be occasioned thereby and the soil replaced in reasonable manner so that there may be no unsightly condition occasioned thereby. (Plaintiffs' Exhibit 4)
Approximately ten years later, the same grantor as above (Adrian Van Muffling) made reference to the Plaintiffs' septic system easement, in a deed of the servient property to the defendants' predecessors in title, William A. O'Leary, dated September 8, 1948 and recorded on September 9, 1948 in the New Milford Land Records, Vol. 113, Page 241. This deed did not create the easement, but repeats the language which created the easement ten years before in the deed to the plaintiffs' predecessor in title. This deed of the servient property also contained the following descriptive language:
 The septic tank and the effluent drain is located as follows: The center of the septic tank, which is four feet in diameter, is marked by the intersection of two radii, one measured eighteen (18) feet from the southerly boundary of the property described herein and perpendicular thereto and the other measured 47 feet 10 inches from the iron bolt in the corner monument, marking the southwestern boundary of the property described herein. The tile effluent line from the septic tank extends 17 feet to the north end of the tank.
The above quoted language was not contained in the deed creating the easement.
The septic system has failed and must be replaced. It cannot be repaired. On January 31, 1996, the Town of New Milford sent CT Page 13626 the Plaintiffs a notice of violation for the "failing subsurface sewage disposal system," and the plaintiffs were ordered to correct the condition by April 1, 1996. A replacement system cannot be placed on top of the present one. It is likely that a new system can be designed for location in the same general area. To prepare for this, both percolation and deep hole tests must be conducted, which requires the use of a backhoe.
The cost of construction of a new septic system on the plaintiffs' property would be astronomical and prohibitive.
The defendants claim that the "existing septic tank is an illegal installation" on their property, and have demanded that the plaintiffs "remove the septic system and install it on their own property." The plaintiffs therefore are being prevented from replacing the septic system on the defendants' property.
This court, with the consent of the parties, and accompanied by both attorneys, conducted an on site inspection of both properties. As a result of this inspection and trial testimony, the court finds that there is only one reasonably plausible way for the equipment needed for testing and installation of a replacement septic system to reach the area in question. That way is from the top of the driveway over which the plaintiffs have a right of way, beginning a short distance north of the property line, proceeding in a westerly direction down the hill to the septic system area. Any other way, whether from the plaintiffs' property or from the defendants' property, would cause an entirely disproportionate amount of damage. Any damage to the defendants' property caused by the above described route would be relatively minor; it would occur in a location that should not have a significant impact on the defendants' enjoyment of their property, nor on the appearance of their property, and defendants' property affected could be substantially restored to its present condition without great expense.
The defendants refuse to permit the plaintiffs and their contractors to come on their property to do the necessary preliminary testing and eventual repair of the septic system.
Discussion of Applicable Law
A. Injunction
If the defendants are found to be interfering with the CT Page 13627 plaintiffs' easements, an injunction should be issued:
 An injunction is the proper means of preventing interference with the dominant property owner's use of an easement and that injunctive relief should be granted unless it would impose a severe hardship on the servient property owners.
Crandall v. Gould, 40 Conn. App. 164, 170 (1997).
 The granting of an injunction rests within the sound discretion of the trial court and "[i]n exercising its discretion, the court . . . may consider and balance the injury complained of with that which will result from interference by injunction." Moore v. Serafin, 163 Conn. 1, 6, 301 A.2d 238 (1972); see also Berin v. Olson, supra, 183 Conn. 343.
Castonguay v. Plourde, 46 Conn. App. 251, 266-267 (1997).
B. scope of Easements
 This interpretation is fortified by the rule that in the construction of an instrument creating an easement, ambiguous language, in a case of reasonable doubt will be construed in favor of the grantee rather than in favor of the grantor. Sweeney v. Landers, Frary Clark, 80 Conn. 575, 579, 69 A. 566.
Gager v. Carlson, 146 Conn. 288, 298 (1959).
The character and extent of an easement are measured by the language of the original reservation or grant. See Park v.Mackowsky, 85 Conn. 190, 193 (1912).
C. Violation of an Easement
1. Driveway Easement
The defendants stipulated during trial that they will move a gate post so as to provide the full ten feet of the right of way which they have admitted the plaintiffs are entitled to. CT Page 13628
 "The law is settled that the obligation of the owner of the servient state, as regards an easement is not to maintain it, but to refrain from doing or suffering something to be done which results in an impairment of it. 2 Thompson Real Property (Perm. Ed.) § 675."
Kelly v. Ivler, 187 Conn. 31, 45 (1982).
The defendants' actions in closing the gate and the harassing of the plaintiffs and their invitees by the defendant Romeo constitutes an impairment of the plaintiffs' right of way.
2. Septic Easement
This easement gives the plaintiffs the right "to enter upon said premises at any time for the purpose of repairing or renewing said septic tank, pipes, drains and fields and to do such digging and to make such excavations as may be necessary therefor, provided no unnecessary damage shall be occasioned thereby and the soil replaced in reasonable manner so that there be no unsightly condition occasioned thereby."
This language is sufficiently broad to permit the plaintiffs to rebuild the failing septic system and to do whatever digging and excavating is reasonably necessary for this process, including preliminary test borings.
The language which creates this easement contains the words "a right and privilege to maintain as presently located the septic tank, pipes, drains and fields. . . ."
The defendants claim on page 16 of their Memorandum dated September 10, 1997, that the words "as presently located" unqualifiedly limit the plaintiffs' right to repair and renew the tank and/or fields, to the location of the existing tank and fields at the time of the creation of the easement, however restrictive that may prove itself to be. Such an interpretation is both unduly literal and harsh, and what is more significant, it does not accurately reflect our law, as stated in the case ofPeck v. Mackowsky.
 For a determination of the character and extent of the easement reserved by Barber, we CT Page 13629 must look to the language of his deed, and, if that language is in any respect uncertain or ambiguous, then to that language as read in the light of the situation of the property and the surrounding circumstances, to the end that the intention of the parties may be ascertained and given effect. Sweeney v. Landers, Frary Clark, 80 Conn. 575, 578, 69 A. 566. "In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view." Walker v. Pierce, 38 Vt. 94, 97; Rowell v. Doggett, 143 Mass. 483, 487, 10 N.E. 182. When the deed is so read and construed, it is reasonably apparent that the words "as now used," with which the reservation concludes, were employed to designate the location of the way, and not to define or restrict the use to which the way might be put. The grant thus becomes one defined in general terms, and without express limitation as to the character of the user.
 Such a grant is to be construed as broad enough to include any reasonable use to which the land might be devoted. Abbott v. Butler, 59 N. H. 317, 318. "A right of way granted or reserved in general terms may be used for any purpose reasonably necessary for the party entitled to use it. . . . The grant being general in terms, it must be construed to include any reasonable use to which the land may be devoted." Jones on Easements, § 375; Gillespie v. Weinberg, 148 N.Y. 238, 240, 42 N.E. 676; Watts v. Johnson R. E. Corp'n, 105 Va. 519. 525, 54 S.E. 317; Shreve v. Mathis, 63 N.J. Eq. 170, 178, 52 A. 234; Gunson v. Healy, 100 Pa.St. 42, 46.
Peck v. Mackowsky, 85 Conn. 190, 193-194 (1912).
This court concludes, as was analogously done in Peck v.CT Page 13630Mackowsky, supra, that the words "as presently located", were used to designate the general location of the septic system, and not to restrict a reasonable and necessary departure from the exact, precise bounds of the system for the purpose of "repairing or renewing said septic tank, pipes, drains and fields. . .". The septic system is not located near the defendants' home and is in a relatively isolated part of their property, and the location of a replacement system adjacent to the current system, should not reasonably affect the defendants' use and enjoyment of their property.
If the court were to adopt the restrictive interpretation urged by the defendants, the result would virtually render the plaintiffs' property useless and worthless. On the other hand, the interpretation urged by the plaintiffs would be minimally intrusive and damaging to the defendants.
In reaching this conclusion, the court has considered "the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view." See Peck v. Mackowsky, supra, pages 193-194.
Conclusion
A. The court grants the plaintiffs' request for an injunction, permanently enjoining the defendants from blocking or impeding the plaintiffs' right of way for ingress and egress to and from the highway, including but not limited to, closing the gate, verbally accosting the plaintiffs and communicating to third parties that they have no right to passage over the easement. The defendants are also ordered to move the gatepost so as to leave open the full ten feet width of the easement.
B. The court further grants the plaintiffs' request for an injunction permanently enjoining the defendants from interfering with the right of the plaintiffs and their agents to enter upon the defendants' property in order to replace the septic system serving the plaintiffs' property, including the right of the plaintiffs, and their agents to bring onto the defendants' property along the route specified above as the only reasonably plausible way, whatever machines are reasonably necessary to perform appropriate pre-construction excavation and borings, as well as the actual replacement of the septic system. The plaintiffs are ordered to locate the replacement septic system as CT Page 13631 close to the present system as is reasonably possible and appropriate. The plaintiffs are further ordered to cause no damage to the surroundings except what is reasonably necessary, and to restore the land to its original appearance as soon as and to the extent that is reasonably possible.
HON. RICHARD A. WALSH, J.