******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM FRANCINI *v.* GOODSPEED
AIRPORT, LLC, ET AL.
(AC 37258)

DiPentima, C. J., and Lavine and Lavery, Js.

*Argued October 20, 2015—officially released April 5, 2016*

(Appeal from Superior Court, judicial district of
Middlesex, Aurigemma, J.)

*Jonathan D. Chomick,* for the appellant (plaintiff).

*John R. Bashaw*, with whom was *Mary Mintel Miller*, for the appellee (named defendant).

*Opinion*

LAVERY, J. The plaintiff, William Francini, appeals from the trial court's judgment granting the motion for summary judgment filed by the defendant Goodspeed Airport, LLC.[1] On appeal, the plaintiff claims that the court improperly granted the motion for summary judgment as a matter of law because the court wrongly concluded that an easement by necessity may be granted only to provide physical access to a landlocked parcel and not for the purpose of installing commercial utility lines. Although the issue of whether an easement by necessity is reserved only for physical access to a landlocked parcel is one of first impression for this court, we recognize that this issue has been squarely addressed by many of our sister states and by a federal magistrate judge in this state. We conclude that the court incorrectly concluded, as a matter or law, that an easement by necessity may be granted to a landlocked parcel only for the purpose of ingress and egress. Accordingly, we reverse the judgment of the court.

The following facts, as alleged by the plaintiff and admitted by the defendant, are not in dispute for the purpose of this motion for summary judgment. The plaintiff owns a parcel of land in East Haddam. The parcel's only access to a public highway is over an abutting property, owned by the defendant. The defendant took title to its property by warranty deed in 1999, subject to a right-of-way easement now enjoyed by the plaintiff as well as several of the plaintiff's neighbors, landowners who also own land abutting the defendant's property. The 1999 warranty deed expressly described the right-of-way, in general terms and without limitations on its use, by providing for "[s]uch rights as others may have to a Right of Way over a passway or driveway as set forth in a deed from [the property's prior owner], dated August 16, 1963 and recorded in Volume 77 at Page 526 of the East Haddam Land Records . . . ."

In 2001, the defendant entered into an agreement with several of the plaintiff's neighbors, who also share the plaintiff's right-of-way across the defendant's property, to allow the neighbors to improve the right-of-way by installing and maintaining a utility distribution system under the existing right-of-way easement. As a result, a commercial utility system was constructed under the existing right-of-way and now provides electricity to the plaintiff's neighbors. In exchange for this utility easement, each of the plaintiff's neighbors paid the defendant $7500. The plaintiff offered to pay the defendant the same $7500 that his neighbors had paid for use of the utility easement, but the defendant requested that the plaintiff not only pay the $7500, but also grant it the power to move the location of the easement at will. The plaintiff declined the additional terms and the two parties never reached an agreement. Without an agreement, the plaintiff does not enjoy an

easement for commercial utilities and his property is currently landlocked from access to commercial electricity. Currently, the plaintiff's house is powered by a generator, but the generator is alleged to be insufficient to run and maintain the basic requirements of the plaintiff's house such as powering security devices, turning on automatically in the event of a flood, and running a refrigerator to preserve perishable food without constant operation of the generator.

In 2011, the plaintiff commenced this action seeking an easement by necessity for access to commercial utilities across the same right-of-way that he already owned and that already provided his neighbors with commercial electric power. In 2012, the defendant filed a motion for summary judgment, admitting the facts as alleged by the plaintiff for the purpose of the motion, and arguing that, under those facts, the plaintiff was not entitled to an easement by necessity for commercial utilities because easements by necessity may be granted only to provide physical access to landlocked parcels. The plaintiff opposed the motion by claiming that there was a dispute of material fact—his need for commercial electricity[2]—and maintaining that he was entitled to an easement by necessity for access to commercial utilities because electricity was reasonably necessary for the continued enjoyment of his property and connecting his property to the already existing utility easement would not unreasonably burden the defendant's property. The court, *Aurigemma, J.*, granted the defendant's motion for summary judgment on the ground that easements by necessity may not be granted for any purpose other than to provide physical access to a landlocked property. This appeal followed.

On appeal, the plaintiff claims that he is entitled to an easement by necessity for access to commercial utility services, i.e., electricity. Acknowledging that no such easement by necessity has yet been recognized by an appellate court in our state, the plaintiff argues that easements by necessity should be extended to provide access to commercial utilities because access to utilities, consistent with the easement's element of necessity, supply something that is highly convenient and beneficial to the use of property. The defendant responds that Connecticut law has recognized easements by necessity to exist only in the classic context of providing a property owner with physical access to a landlocked parcel for purposes of ingress and egress, which is to say that an easement for commercial utilities does not exist simply because one has never been granted before. The trial court, correctly observing that no such easement has ever been granted by an appellate court in this state, agreed with the defendant and rendered summary judgment on the plaintiff's claim. We reverse the judgment based on this conclusion of law and determine that easements by necessity for access to utility services exist in Connecticut.

Before we address the specific claim advanced in this appeal, we set forth the standard for appellate review of a court's decision to grant a motion for summary judgment. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Fernandez* v. *Standard Fire Ins. Co.*, 44 Conn. App. 220, 222, 688 A.2d 349 (1997).

The parties agree, however, that there is no dispute of material facts in this case. Instead, the plaintiff challenges only the court's conclusion of law, that an easement by necessity may not be granted to provide commercial electricity to a parcel cut off from commercial electricity. Accordingly, "[b]ecause the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Soares* v. *George A. Tomasso Construction Corp.*, 66 Conn. App. 466, 469, 784 A.2d 1041 (2001). Moreover, the plaintiff's claim raises a question of law "concerning the court's application of the law of easements by necessity, over which our review is plenary." *Thomas* v. *Primus*, 148 Conn. App. 28, 32, 84 A.3d 916 (2014).

The common-law easement by necessity creates an implied servitude that burdens one piece of property, the servient estate, for the benefit of another, the dominant estate, to enable the normal "use and enjoyment of the [benefited] property." Id., 33; see also 1 Restatement (Third), Property, Servitudes § 2.15, comment (a), p. 203–204 (2000); 2 G. Thompson, Real Property (Permanent Ed. 1939) § 550, p. 150 ("[the extent of] a way of necessity covers such a way as is required for the complete and beneficial use and enjoyment of the land to which such way is impliedly attached"). In the classic example, "an easement by necessity will be imposed where a conveyance by the grantor leaves the grantee

with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee." *Hollywyle Assn., Inc.* v. *Hollister*, 164 Conn. 389, 398–99, 324 A.2d 247 (1973). In such cases, the element of necessity lies in the grantee's inability to use his property beneficially because he lacks physical access to it, "[f]or the law will not presume, that it was the intention of the parties, that one should convey land to the other, in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder." *Robinson* v. *Clapp*, 65 Conn. 365, 385, 32 A. 939 (1895). In other words, "the necessity does not create the way, but merely furnishes evidence as to the real intention of the parties"; id.; because courts ascribe to the parties a fictitious intent—presumably, if the parties actually intended there to be an easement, they would have said so in the written grant—based on "the public policy that no land should be left inaccessible or incapable of being put to profitable use." (Internal quotation marks omitted.) *Thomas* v. *Primus*, supra, 148 Conn. App. 36; see 28A C.J.S. 310, Easements § 106 (2008) ("[t]he law recognizes under some circumstances an implied easement or way of necessity to landlocked parcels of realty based on public policy favoring their use and development and that land should not be landlocked and rendered useless" [footnotes omitted]). Accordingly, the easement is based on the beliefs that parties do not intend to effectuate a conveyance that would render the land useless; *Collins* v. *Prentice*, 15 Conn. 39, 44 (1842); 1 Restatement (Third), supra, § 2.15, comment (a); and that parties naturally intend to convey whatever rights are necessary for the use and enjoyment of the land conveyed. 28A C.J.S., supra, p. 311 ("[t]he implication of easements of necessity is an application of the rule that wherever one conveys property the person also conveys whatever is necessary for its beneficial use and enjoyment"); see *Whittelsey* v. *Porter*, 82 Conn. 95, 101, 72 A. 593 (1909) ("[a] grant of a thing will include whatever the grantor had power to convey which is reasonably necessary to the enjoyment of the thing granted" [internal quotation marks omitted]), citing 3 E. Washburn, Real Property (4th Ed. 1876) p. 394; see also *Birdsey* v. *Kosienski*, 140 Conn. 403, 413, 101 A.2d 274 (1953) ("[s]uch a grant is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant").[3] "[T]o fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming the right of way. The necessity need only be a reasonable one." (Internal quotation marks omitted.) *First Union National Bank* v. *Eppoliti Realty Co.*, 99 Conn. App. 603, 608, 915 A.2d 338 (2007).[4] Therefore, the imposition of an easement by necessity upon the burdened estate is justified by two partnering

rationales, the presumed intent of the parties to the conveyance and general public policy.

Today, we conclude that easements by necessity may provide not only physical access to landlocked property, but a property landlocked from commercial utilities may likewise receive an easement by necessity to access utility services. Easements by necessity are not artifacts of a more ancient era and must serve their intended purpose, to render land useful, in the present day as the beneficial use of land conforms to modern innovations and needs. This follows from the general rule that the need constituting the necessity that implies an easement by necessity may change over time. See *Myers* v. *Dunn*, 49 Conn. 71, 77–78 (1881); *Lichteig* v. *Churinetz*, 9 Conn. App. 406, 410, 519 A.2d 99 (1986); Restatement (Third), supra, § 2.15, comment (d). In fact, in the context of a granted right-of-way, the easement's owner may use the easement for all purposes consistent with the reasonable use of the benefited land and is not limited to using the easement for only those purposes that existed at the time the benefited and burdened properties were created. *Lichteig* v. *Churinetz*, supra, 410. "In other words, a way of necessity is held to be coextensive with the reasonable needs, present and future, of the dominant estate . . . ." (Internal quotation marks omitted.) *Morrell* v. *Rice*, 622 A.2d 1156, 1160 (Me. 1993); see *Davis* v. *Jefferson County Telephone Co.*, 82 W.Va. 357, 95 S.E. 1042, 1044 (1918) ("the grantee of such an easement is entitled to vary his mode of enjoying the same, and from time to time to avail himself of modern inventions; if, by so doing, he can more fully exercise and enjoy the object or carry out the purpose for which the easement was granted"). We therefore reject the defendant's argument that easements by necessity may be granted only for physical access to landlocked property simply because no such easement has yet been recognized. To "deny [property owners] such right would be to stop to some extent the wheels of progress, and invention, and finally make residence in the country more and more undesirable and less endurable." (Internal quotation marks omitted.) *Dowgiel* v. *Reid*, 359 Pa. 448, 459, 59 A.2d 115(1948).

In our view, the legal justifications underlying easements by necessity, intent and public policy, support extending the doctrine to include access to utilities for properties landlocked from them. Utilities are so obviously necessary for the reasonable use and enjoyment of all types of property that the law will assume that parties to a land conveyance intend to convey whatever is necessary to ensure a property's access to utilities in the same way that the law presumes the parties intended to convey an easement for physical access. See *D'Amato* v. *Weiss*, 141 Conn. 713, 717, 109 A.2d 586 (1954) (necessity present where "easement is 'highly convenient and beneficial' for the enjoyment of the

[dominant estate]"), citing 1 G. Thompson, supra, § 339; *Collins* v. *Prentice*, supra, 15 Conn. 44 (necessity "merely furnishes evidence as to the real intention of the parties"). Likewise, because utilities are required for most reasonable uses of property, public policy dictates that access to utilities be implied to ensure "that no land should be left . . . incapable of being put to profitable use." *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 400. Accordingly, we conclude that access to utilities is reasonably necessary to the reasonable use and enjoyment of property, especially, as is the case here, residential property. "A house generally is not considered to be a residence without water, electricity, and similar utilities, e.g., the ability to be heated and cooled, lit in the dark, and equipped for communication with the outside world." *Stroda* v. *Joice Holdings, LLC*, 288 Kan. 718, 728, 207 P.3d 223 (2009). To deny a residence access to utilities would, practically speaking, deny use of that property as a residence. See *Richards* v. *Land Star Group, Inc.*, 224 Wis. 2d 829, 842, 593 N.W.2d 103 (1999).

As further support, under the approach adopted by the Restatement (Third) of Property, Servitudes, a property that is landlocked from commercial electricity enjoys an implied easement by necessity for utility services. 1 Restatement (Third), supra, § 2.15. The Restatement (Third), itself adopted eighteen years ago, explains that "the increasing dependence in recent years on electricity and telephone service, delivered through overland cables, justify the conclusion that implied servitudes by necessity will be recognized for those purposes." Id. For example, "O, the owner of Blackacre and Whiteacre, conveyed Whiteacre to A. Whiteacre is landlocked, but Blackacre abuts a public street. The property is located in a rural residential area and it is suitable for residential use. A servitude for necessity will be implied for access for surface travel *and for utility services* normal in the area." (Emphasis added.) Id., illustration (12). By including access to commercial electricity within the easement by necessity, the Restatement (Third) recognizes that " '[n]ecessary' rights are not limited to those essential to enjoyment of the property, but include those which are reasonably required to make effective use of the property." Id.; see 4 Powell On Real Property (M. Woolf ed., 2015), § 34.07 [1], p. 34–45 ("implied easements by necessity have also been found for utilities"); see also L. Jones, Easements (2003) § 324, p. 264 ("[t]he way implied is usually one for all purposes for which the grantee may need to use it for the full enjoyment of the property conveyed"). Therefore, because electricity is essential to daily life and is reasonably required to make effective use of property, the easement by necessity includes not only physical access to landlocked property, but also access to utilities for properties landlocked from utilities. This decision honors both the

principles underlying the easement by necessity and the fundamental actualities of modern life.

With this conclusion, we join with the decisions of many other states that also have held that easements by necessity may be granted for properties landlocked from utility services. See, e.g., *Fleming* v. *Napili Kai, Ltd.*, 50 Haw. 66, 70, 430 P.2d 316 (1967) ("[i]t is the usual and common practice in this State to use roadway easements as rights of way for electricity, telephone, water and drainage facilities and it would be reasonable to construe that [the easement] was reserved not only for purposes of ingress and egress but also for those purposes"); *Brown* v. *Miller*, 140 Idaho 439, 443, 95 P.3d 57 (2004) (agreeing with trial court that "it is only logical [that] an easement by necessity also includes utilities" [internal quotation marks omitted]); *Gacki* v. *Bartels*, 369 Ill. App. 3d 284, 293, 859 N.E.2d 1178 (2006) (declaring that "implied easements by necessity have been recognized for purposes such as access for utilities and other services"), citing 1 Restatement (Third), supra, § 2.15; *New York Central Railroad Co.* v. *Yarian*, 219 Ind. 477, 485, 39 N.E.2d 604 (1942) (granting utility access over easement by necessity under public policy rationale, recognizing that "[e]lectricity is largely used for power and light . . . and that its use contributes to the full and profitable enjoyment of a [property] can hardly be doubted"); *Cline* v. *Richardson*, 526 N.W.2d 166, 169 (Iowa App. 1994) ("easement for ingress and egress includes the right to install utilities"), citing *Stott* v. *Dvorak*, Superior Court, judicial district of New London, Docket No. CV-92-0101097-S (April 5, 1994) (easement for right to travel over right-of-way included right to install utilities); *Stroda* v. *Joice Holdings, LLC*, supra, 288 Kan. 728–29 (recognizing easement by necessity for utilities in Kansas); *Tong* v. *Feldman*, 152 Md. 398, 136 A. 822, 823 (1927) ("[r]ights or easements of necessity are more familiarly met with in rights of way, but they are not confined to such rights"); *Adams* v. *Planning Board*, 64 Mass. App. Ct. 383, 391–92, 833 N.E.2d 637 (2005) (extending right to install utilities over right-of-way to easements by necessity);[5] *Morrell* v. *Rice*, supra, 622 A.2d 1160 ("[a]n easement created by necessity can include not only the right of entry and egress, but also the right to make use of the easement for installation of utilities, essential for most uses to which property may reasonably be put in these times"); *Ashby* v. *Maechling*, 356 Mont. 68, 78, 229 P.3d 1210 (2010) (holding that "modern vehicle access and utility services may be allowed as part of an easement by necessity even though the easement arose as a legal matter before the general use of such improvements"); *Firstenberg* v. *Monribot*, 350 P.3d 1205, 1219–20 (N.M. App. 2015) (affirming summary judgment granting of easement by necessity to property owner for electrical meter and switch); *Dowgiel* v. *Reid*, supra, 359 Pa. 452, 460 (recognizing that "in almost every American home . . . elec-

tricity is almost as much of a necessity as is water," and concluding that easement by necessity includes right to "obtain something which is essential to the livableness of the home, to wit, electricity"); *Regan* v. *Pomerleau*, 107 A.3d 327, 338 (Vt. 2014) ("[i]t is well settled in Vermont and elsewhere, however, that an implied easement by necessity may arise by operation of law where it is essential to the reasonable enjoyment of [the] land . . . and that this principle incorporates access to essential utilities" [citation omitted; internal quotation mark omitted]); *Davis* v. *Jefferson County Telephone Co.*, supra, 95 S.E. 1044 (construing easement by necessity for telephone lines because "[i]f then those living in a rural district with only such unlimited private ways as [physical access] are to enjoy any of the modern conveniences, such as electric light, natural gas, telephones, and the like, they must of necessity rely upon such ways by which to obtain them"); *Atkinson* v. *Mentzel*, 211 Wis. 2d 628, 641, 566 N.W.2d 158 (Wis. App. 1997) (construing general grant of right-of-way to include access to utilities because "[a]lthough at the time of the conveyance creating the easement the property was not served by utilities, the reasonable use of the property in current times requires utility services"); see also *Galvin* v. *Gaffney*, 24 F. Supp. 2d 223, 233–35 (D. Conn. 1998) (interpreting Connecticut law to provide easements by necessity for commercial utilities).[6]

Moreover, finding an implied easement by necessity for utilities is even more compelling in situations, as is this case, where the property to be benefited already enjoys a right-of-way across the burdened property under a general grant without any limitations. See footnote 6 of this opinion (explaining that property is not required to have preexisting right-of-way easement to be granted easement for access to utilities). Generally, "[a] right of way granted or reserved in general terms may be used for any purpose reasonably necessary for the party entitled to use it. . . . The grant being general in terms, it must be construed to include any reasonable use to which the land may be devoted." *Peck* v. *Mackowsky*, 85 Conn. 190, 194, 82 A. 199 (1912), citing Jones, supra, p. 300; see *Myers* v. *Dunn*, supra, 49 Conn. 78 (general grant conveys "an unlimited way of necessity for all legal uses"); see also *Birdsey* v. *Kosienski*, supra, 140 Conn. 413 (construing general grant of right-of-way broadly "to permit any use which is reasonably connected with the reasonable use of the land"). The reasonable uses, to which the granted right-of-way may be put, need only be reasonably connected with the land and "are not limited to those to which the land was being put when the way was granted." *Birdsey* v. *Kosienski*, supra, 413; see *Myers* v. *Dunn*, supra, 77–78. For instance, the owner of an easement may use the easement in ways which take advantage of modern innovations such as commercial utilities. *Davis* v. *Jefferson County Telephone Co.*, supra, 95 S.E. 1044. Fur-

ther, when determining the scope of an easement created by grant, any ambiguity in the grant, in a case of reasonable doubt, is construed in favor of the grantee. *Mackin* v. *Mackin*, 186 Conn. 185, 189, 439 A.2d 1086 (1982).

In this case, the grant of the right-of-way is in general terms without any restrictions other than its use as a right-of-way. "Such a grant is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant." *Birdsey* v. *Kosienski*, supra, 140 Conn. 413. Additionally, because utility lines already exist underneath the right-of-way, connecting the plaintiff to the preexisting utilities lines will present a minimal, if any, additional burden on the defendant's property.[7] Therefore, the plaintiff is not restricted to using the right-of-way purely for ingress and egress and may use it for "any use which is reasonably connected" with maintaining a residence on the property. Id.; see *Myers* v. *Dunn*, supra, 49 Conn. 77. Surely, "[i]n current times, the reasonable use and enjoyment of property, at a minimum, requires utilities as long as it does not overburden the servient estate." 25 Am. Jur. 2d, Easements and Licenses, § 71 (West 2016).

We next apply the law of easements by necessity as just set forth to the facts in this case. We view the facts in the light most favorable to the plaintiff, as we must; *Fernandez* v. *Standard Fire Ins. Co.*, supra, 44 Conn. App. 222; and, accordingly, determine that under our expanded view of easements by necessity, the defendant's motion for summary judgment should have been denied. The defendant alternatively argues that, even if a property owner may receive an easement by necessity for access to commercial utilities, the circumstances in this case preclude the plaintiff from enjoying such an easement because he has failed to establish the necessity required for granting such easement. Specifically, the defendant argues that the plaintiff's operation of a generator on his property is a reasonable substitute to commercial electricity. See *Marshall* v. *Martin*, 107 Conn. 32, 38, 139 A. 348 (1927). Here, however, the facts, as alleged by the plaintiff and admitted by the defendant for the purpose of this motion, intrude.

Our determination that easements by necessity may be granted to allow a property access to commercial utilities rests on the easement's underlying rationales, that parties generally would not intend to deprive properties of utility access and that utility access is necessary for the productive use of property. This reasoning obviously requires that the utilities—or their substitute—be sufficient to allow the full reasonable beneficial enjoyment of the property. Here, the plaintiff alleged in his complaint, and the defendant admitted for the consideration of this motion, that the "generator is wholly insufficient to provide the electricity needed

to run and maintain a house in one or more of the following ways: (a) a generator cannot automatically turn on in the event of a flood and a sump pump needs to be turned on; (b) a generator is loud and if kept running often would adversely affect the neighbors and the plaintiff; (c) a generator is dangerous to leave running without supervision for long periods of time; (d) the plaintiff cannot use the innumerable electronic devices which are a major part of this society without first turning on a generator; (e) the plaintiff cannot use a garage door opener upon his arrival at the house unless the plaintiff first turns on a generator, thereby defeating the purpose of having a garage door opener; (f) the plaintiff's house is a summer house and he spends time in Florida during the winter months, without commercial electrical power the plaintiff cannot rest assured that he will have a working sump pump; (g) the plaintiff has had persons come onto his property when he has been away and he cannot install security cameras on his property without commercial electricity; (h) virtually every visitor expects to have electricity when visiting the house; (i) the plaintiff cannot rent the house out during the summer months due to concerns over the safety of renters while trying to operate a generator; [and] (j) the plaintiff cannot leave perishable food items in his refrigerator or freezer for any length of time without running a generator nonstop." These allegations of fact prevent us from affirming the court's granting of summary judgment to the defendant under this expanded view of easements. They do not suggest mere inconvenience, but indicate inadequacy. Moreover, the law in this context does not seek to grant relief that, practically speaking, is "no better than none at all." (Internal quotation marks omitted.) *Deane* v. *Kahn*, 317 Conn. 157, 176, 116 A.3d 259 (2015). Accordingly, we decline to hold as a matter of law that the plaintiff is not entitled to an easement by necessity under the facts as alleged. We do not, however, conclude that the plaintiff is entitled to the easement; we merely hold that the facts as alleged by the plaintiff, viewed in the light most favorable to the plaintiff and undeveloped by any evidence, prevent the defendant from prevailing on its motion.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.

[1] Seven additional defendants initially were served with the complaint to give them notice of pending litigation pursuant to General Statutes § 52-102. The plaintiff subsequently withdrew the complaint against them. In this opinion, we refer to Goodspeed Airport, LLC, as the defendant.

[2] The plaintiff abandoned his claim that there was a dispute of material fact before this court. See *Traylor* v. *Gerratana*, 148 Conn. App. 605, 615, 88 A.3d 552 ("appellant who fails to brief a claim abandons it" [internal quotation marks omitted]), cert. denied, 312 Conn. 901, 902, 91 A.3d 908 (2014).

[3] Naturally, because the law attributes to the parties a fictional intent, the

parties' express showing of actual intent not to grant such an easement would preclude the granting of the easement. See *Leposky* v. *Fenton*, 100 Conn. App. 774, 779, 919 A.2d 533 (2007).

[4] Absolute need, strict necessity, occurs "[i]f the situation is such that the landowner has absolutely no access to his property except across the land of his grantor, [in that situation] the presumption [that the parties intended an easement by necessity] is clear and the right [to have the easement is] undoubted." *Deane* v. *Kahn*, 317 Conn. 157, 176, 116 A.3d 259 (2015). On the other hand, our Supreme Court recently described " 'reasonable necessity' " as "represent[ing] only a narrow exception to the vast extent of our case law, which generally provides for the creation of an easement by necessity only when a parcel is truly landlocked." Id., 181. For example, reasonable necessity exists "when the expense of making the means of access available [through a landowner's adjacent, yet separate lot] would exceed the entire value of the property to which access was sought." (Internal quotation marks omitted.) Id. Thus, the test for reasonable necessity is "whether the party claiming the right can at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute." *Marshall* v. *Martin*, 107 Conn. 32, 38, 139 A. 348 (1927).

[5] In fact, Massachusetts has a statute that provides in relevant part: "The owner or owners of real estate abutting on a private way who have by deed existing rights of ingress and egress upon such way or other private ways shall have the right by implication to place, install or construct in, on, along, under and upon said private way or other private ways pipes, conduits, manholes and other appurtenances necessary for the transmission of gas, electricity, telephone, water and sewer service . . . ." Mass. Gen. Laws. ch. 187, § 5.

[6] In *Galvin* v. *Gaffney*, supra, 24 F. Supp. 2d 223, 235, United States Magistrate Judge for the District of Connecticut, Holly B. Fitzsimmons, concluded that the owner of a right-of-way easement was entitled to use the easement to connect the dominant estate to utility services, under Connecticut law, reasoning that the installation of utilities is highly convenient and beneficial to the use of the dominant estate. That conclusion rested in part on the notion that the easement could be used to continuously carry generator fuel, heating oil, and other supplies to the dominant estate and that the alternative laying of utility lines would, in reality, present less of a burden and inconvenience to the servient estate. Id., 234–35. Although that reasoning is certainly applicable to the present case, it is not essential that a property landlocked from utilities already enjoy a right-of-way easement for physical access to be granted an easement to connect to utility services. Therefore, we agree with the conclusion of Magistrate Judge Fitzsimmons that easements by necessity for access to utilities may be granted to properties landlocked from utilities under the theory that electricity is necessary to the beneficial use and enjoyment of property in current times.

[7] Any costs relating to the maintenance of the easement will be shared by each of the owners benefiting from the easement. General Statutes § 47-42f (c) ("[i]f more than one residential real property benefits from such easement or right-of-way, the cost of maintaining and repairing or restoring such easement or right-of-way shall be shared by each owner of a benefited property").